# WILLIAM R. BOGGS, JR. *vs.* THE INTER-AMERICAN MINING AND SMELTING COMPANY.—THE SAME *vs.* W. R. BOGGS.

*Regularity of service of writ of summons—Action against foreign corporation on liability incurred in this State—Striking out judgment by default—Appeal—Security for costs.*

When a person is informed of the institution of a suit and knows that a deputy sheriff is about to serve a writ of summons upon him in that suit, the fact that he runs out of the room when the deputy begins reading the writ in order to evade the service is of no effect, and such party will be treated as having been duly summoned.

Under Code, Art. 23, sec. 409, etc., if a foreign corporation, while transacting business in this State, incurs contractual liability here and subsequently removes its office to another State, the Courts of this State have jurisdiction of an action on such liability against the corporation by service of process upon any director of the corporation found within this State.

A judgment by default regularly entered under the Practice Act, should not be stricken out after lapse of the term at which it was entered unless there be clear proof that it was obtained by fraud, surprise or mistake.

No appeal lies from an order refusing to require a plaintiff to furnish security for costs, when it is not final, and when it does not appear that the plaintiff is in fact a non-resident.

*Decided April 2nd, 1907.*

Appeals from the Superior Court of Baltimore City (STOCK-BRIDGE, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*Stuart S. Janney* (with whom was *Albert C. Ritchie* on the brief), for the appellant, Boggs.

· The plaintiff has asserted a right to sue the appellee in the Courts of this State on a contract made while the company was doing business within the State and maintained its prin-

cipal office therein.   After admitting every fact, of which evidence has been produced, this right may be upheld on either of two hypotheses, under Code, Art. 23, secs. 410–414.

1. That the plaintiff is a resident, in which event it does not matter where the cause of action arose.

2. That the plaintiff is a non-resident, and the liability was incurred within the State.

Neither of these hypotheses is negatived in the testimony.

It should be observed, that strictly speaking, this case does not involve the question of the jurisdiction of the Court.   It involves solely the right to exercise that jurisdiction, thus the Court would have undoubted power to determine the cause, even though the plaintiff was shown to be a non-resident, and the *situs* of the contract were without the State provided the defendant after proof of the facts did not set up the defense, and having submitted to the jurisdiction below, the corporation may not raise the point on appeal. *Fairfax Company* v. *Chambers*, 75 Md. 614.   Also that this jurisdiction to determine a transitory action is inherent in a Court of general jurisdiction, and when a plaintiff asserts a right to sue, every fact depended upon to defeat that right must be proved.   *Universal Life Insurance Company* v. *Bachus*, 51 Md. 28, is conclusive of this branch of the case.

A party seeking to set aside a judgment after the lapse of the term, must establish his right to it by clear and convincing proof. *Anderson* v. *Graff*, 41 Md. 601; *Hall* v. *Holmes*, 30 Md. 558; *Sarlouis* v. *Firemen's Ins. Co.*, 45 Md. 241; *Smith* v. *Block*, 51 Md. 247.   In Courts of general jurisdiction it is to be presumed that the proceedings are regular and that whatever is done is legally and rightfully done.   *Schultze* v. *State*, 43 Md. 295.   See also *Ferguson* v. *Crawford*, 86 N. Y. 611; *Gundlin* v. *Hamburg-American Packet Co.*, 31 Abbott, N. C. 443; *Hand* v. *Soc. for Savings*, 11 N. Y. Supp. 157; *Sims* v. *Bonner*, 21 N. Y. Civ. Pro. 379–81.

When the writ of summons out of the Superior Court came down to the Sheriff to serve on the defendant it was entrusted to deputy Sheriff Gover to serve.   There was a memorandum

on the writ to serve it on H. C. Turnbull, Jr.  The deputy accordingly went to Mr. Turnbull's office, in the Calvert building, and explained his object.  The deputy says Mr. Turnbull saw the writ and told him he hoped Boggs (the plaintiff) would get what was due him.

Turnbull denies making the remark but there is no dispute that Turnbull was perfectly aware of the nature of the suit and that the appellee in this case was the defendant.  Turnbull told the deputy that he was no longer an officer of the company and that the writ could not be served on him.  The deputy thereupon returned to the Sheriff's office for instructions and was told by the chief deputy to return and "serve it on him anyway as he was one of the directors of the company."  When the deputy returned to Turnbull's office the latter shut the door in his face and would not let him serve it. Deputy Thatcher Bell was then entrusted with the service. He went straight to Turnbull's office and having made sure of his identity told him he had papers to serve.  Turnbull exclaimed, "I know what you have got," and jumped up to go out of the room.  Turnbull denies having made the exclamation, but his hasty exit pretty well establishes his knowledge. He admits that he suspected the nature of the deputy's business.  The deputy was ready for an attempt to escape, and as Turnbull was running out of the room he dropped a copy of the declaration and a copy of the process of the Court on the table and commenced reading the original writ.  Turnbull states that upon his return into the room, he found the copy of the declaration on the table, but states he did not find the copy of the writ.  The deputy thereupon made the following return: "Summoned the Inter-American Mining and Smelting Corporation by service on Henry C. Turnbull, Jr., one of its board of directors, and a copy of *narr.* and notice to plead, and a copy of the process left with the defendant."  The defendant company had no office within the State.  Turnbull had been president of the appellee up until March 7th, 1906, and was at the time of the service one of its board of directors. Turnbull took no steps to have a defense made to the suit, and judgment by default was had against the company.

Our statutes do not prescribe the exact manner in which a writ of summons must be served, but it is usual for the deputy to explain the nature of the writ and leave a copy with the party served. In the case of corporations it is necessary that a copy be left, (Code, Art. 23, sec. 411), and sometimes the deputy reads the writ, though there is no provision of law making it necessary for him to do so.

In the present instance, the deputy did exactly what it was his plain duty to do. He could not lay hold of Mr. Turnbull, as that would have been an assault, and might have caused a breach of the peace, and he could not force him to accept the papers. The most dignified thing he could do was to deposit the copy of the declaration and copy of the process where Mr. Turnbull would most likely see them, in this instance on the table in his office. It was apparent that Mr. Turnbull had full knowledge of the nature of the suit both from his actions and his remark, and that he could not fail to get the papers. The deputy's duty was therefore complete, and he made his return accordingly.

It not infrequently happens that defendants seek to avoid effective service by flight or otherwise, but the Courts in such instances have uniformly refused to allow them to take advantage of their own wrong. "It may be asked what shall be done in case a party will not accept papers offered him with a view to their service upon him? Suppose he reject them and turn away, how is service to be effected? The answer is ready and plain. The officer will inform him of their nature, and of his purpose to make service of them and lay them down at any appropriate place in his presence. This would be good service, undoubtedly, in case the party to be served refuses to receive them." *Davidson* v. *Baker*, 24 How. Prac. 42.

"The defendant refused to remain and hear the summons read to him, he would not stay to hear it; and without further nishing the Court with any reason or excuse for his doing so he seeks a reversal because the summons was not read to him, thus attempting to take advantage of his own improper

conduct. We are of the opinion the service was sufficient and his not knowing of the adjournment was his own folly." *Slaught* v. *Robbins,* 13 N. J. L. 340.

"It is, of course, impossible to compel a party to receive papers offered him with a view of making a service, any act of violence, is not to be tolerated, and when a party refuses to accept a copy of a summons which is offered to him in a civil and proper manner after being informed what the paper is, there is no other way to make service but deposit the process in some appropriate place in the presence of the party, if possible, or where it will be most likely to come to his possession." *Borden* v. *Borden,* 63 Wis. 377.

"The objection is to the sufficiency of service. This invites the inquiry whether the return of an officer, that he offered a summons to defendant, and upon the defendant's refusal to receive it, threw it down, discloses a sufficient service. No officer can compel one to take from him a summons; all he can do is to offer it. If the law required the service of writs to be made by reading only, would it be said to be invalid because that when the officer begun to read the defendant went off or turned a deaf ear? In this case the officer might properly have made a return in the usual form instead of stating specifically what he did. If there was any fault it belonged to the defendant, and the loss, if any, must be his." *Baker* v. *Carecton,* 32 Me. 334-5; *Gregory* v. *Harmon,* 10 Ia. 447; *Norton* v. *Meader,* 4 Sawyer, 609.

It it well settled that in the absence of special statutory provisions providing for service on a corporation in a special manner the process is served in accordance with the general statutes regulating service on individuals. 19 *Ency. of Pleading and Practice,* 667.

The mistake of the agent of the corporation in not taking steps to defend the case is in no way attributable to the plaintiff. When a foreign corporation comes into the State to do business, it accepts the statutory provision that its directors residing within the State may be served with process from the Courts. 13 *Am. and Eng. Ency. of Law,* 895.

The surprise which is the result of the neglect of the defendant or of his agent will not justify a Court in setting aside a judgment after the lapse of the term. *Anderson* v. *Graff*, 41 Md. 601.

When the plaintiff obtained his judgment below he paid in full the costs of the proceedings, and the lower Court in its order setting aside the judgment directed that all costs to date should be paid by the defendant. The defendant thereupon delivered the amount of the costs to the plaintiff's attorney under an agreement to abide the result of this appeal.

Two months after the Court passed its order setting aside the judgment, and three weeks after the order for this appeal had been filed, the costs having all been paid by the plaintiff, the defendant company filed an *ex parte* suggestion in the case that the plaintiff is a non-resident and asked the Court to lay a rule security for costs on the plaintiff. This the Court promptly refused to do, and from this refusal the defendant has appealed.

The plaintiff has filed a motion to dismiss the appeal on the ground that the refusal to place a plaintiff under a rule security·for costs is not a final order and therefore is not appealable. The rule as announced by this Court is that "no appeal in actions at law can be prosecuted until a decision has been had in the Court below, which is so far final as to settle and conclude the rights of the party involved in the action, or to deny to him the means of further prosecuting or defending the suit, as otherwise, by repeated appeals, litigation might be protracted to an almost indefinite period." *Gittings* v *State*, 33 Md. 461.

And the rule security for costs has no application to cases pending in the Court of Appeals. *Poe, Practice*, Sec. 85.

It is also true that there is not one scintilla of evidence in this case to support the allegation that the plaintiff is a non-resident and therefore subject to the rule. The defendant has filed no affidavit to that effect, and it is not proved or admitted in the record. Under such circumstances, the Court could not have done otherwise than refuse to lay the rule.

*Joseph N. Ulman* (with whom were *Harman, Knapp* and *Tucker* on the brief) for Inter-American Mining Co.

When the motion for rule security was made, the costs already accrued in the Superior Court had been disposed of by the agreement of counsel filed on the 4th day of January, 1907. The costs against which the defendant wishes to be protected are, therefore, the costs in the Court of Appeals. The motion was filed at a time when the case had not been tried in the sense indicated by the statute in its interpreting decisions. That is to say,—the judgment by default had been stricken out; and the case was not even at issue inasmuch as the time for filing of pleas had been extended by agreement of counsel. Therefore, the case falls strictly within the decisions in *Haney* v. *Marshall*, 9 Md. 194; *Holt* v. *Tennallytown Co.* 81 Md. 219.

1. Judgments by default are never favored. By striking out the judgment in this case the Court imposed no hardship on the plaintiff, who may still prosecute his case upon its merits in the same Court.

The most that can be said is that the defendant had a technical or constructive notice of the suit through a doubtful service upon a non-acting director. This director's relation to the company; the circumstances under which service was made; the manifest injustice to the defendant corporation, in being precluded from setting up what it believes to be a meritorious and valid defense; its absolute good faith in the premises as shown by the filing of the stipulation; and the further fact that by striking out the judgment by default, the plaintiff is in no wise prejudiced if his claim is a just one are all matters and circumstances for the Court to consider in the exercise of its *quasi* equitable jurisdiction upon this motion to strike out. *Tiernan* v. *Hammond*, 41 Md. 548; *McCormick* v. *Hogan*, 48 Md. 404.

The stipulation of the defendant to secure the fruits of the judgment of the plaintiff if obtained is sufficient in itself to turn the scale in defendant's favor in a doubtful case. *Smith* v. *Black*, 51 Md. 255.

2. The defendant, the Inter-American Mining and Smelting

Company, was never served with summons within the mean-
ing of the statutes of Maryland; so that even if said defendant
were amenable to suit in this State (and it will be shown here-
inafter that it is not), it was not properly in Court when the
judgment by default of the 27th day of June, 1906, was ex-
tended, and said judgment is, therefore, void and should have
been stricken out.

The general method of serving process in the State of Mary-
land is expressed in secs. 141 to 166, inclusive, of Art. 75, of
the Code of 1904. There is nothing in any of said sections
which specifies just how the writ shall be served, that is to say
—the statute law does not require that the writ be read to the
defendant, or that a copy of it be left with him, or that any
other specific steps be taken to complete the service. There-
fore, the rules of the common law will govern, and these are
generally that the officer charged with the duty of serving
summons is not authorized to leave a copy of it, at the office
or place of business of the defendant, and return him as sum-
moned, but that the service must be a personal service. 2
*Poe's Pleading and Practice*, sec. 62. Personal service has
been held to mean generally that the writ must either be read
aloud in the presence of the defendant, or that a copy of it must
be left with him or both. 19 *Encyclopedia of Pleading and Prac-
tice*, 614, *et seq.* When the law requires personal service, then
nothing short of personal service will bind the defendant. *Van
Renneselaer* v. *Palmatier*, 2 Howard's Practice (N. Y.) 24.
And the necessity for personal service will not be dispensed
with by attempts to evade service. On the other hand, can-
dor compels us to state there are a number of cases which hold
that if the attempt to make the service proceeds to such a
point as to give the defendant fair notice of the content of the
writ, and he then persists in preventing the Sheriff or his
deputy from completing the service in due form, such a con-
tumacious defendant will not be permitted to take advantage
of his own wrong-doing; and a judgment obtained against him
after a partial service so interrupted by his own act will not be
set aside. *Cummings & Gilbert's Official Court Rules, Slaught*
v. *Robbins*, 13 N. J. L. 340.

It should be strongly borne in mind that H. C. Turnbull, Jr.; under the undisputed evidence in this case was not acting in bad faith when he refused to allow the deputy Sheriff to serve the summons upon him. He was honestly under the impression (as will be indicated in the next point, we believe under the correct impression) that the corporation of which he was a director could not be sued in the state of Maryland and especially that it could not be sued by serving the summons upon him. · In this state of facts he appears to have thought that the simplest thing for him to do was to refuse to allow the summons to be served upon him. That he thought that his action was entirely efficacious is made manifest by the fact that after the various interviews which the deputy Sheriffs had with him he never took any steps whatever to apprise the officers of the defendant company of what had occurred. Therefore, the defendant company never received the slightest knowledge of the existence of the suit until after the judgment had been rendered. It appears from the record that the first notice the defendant had of the judgment was several weeks later when an attempt was made to collect it. Can it be said that this is a case in which the defendant is seeking to take advantage of his own wrong-doing?

3. The defendant was not amenable to this suit in the State of Maryland, and the judgment and all the proceedings are void for want of jurisdiction. The defendant is a foreign corporation, and is, therefore, not subject to suit in this State, unless by virtue of some statutory provision of this State. The Maryland statutes upon the subject are summed up by Mr. France as follows:

"A foreign corporation doing business here may be sued by a resident for any cause of action; and by a non-resident only where the cause of action arose here, or the subject of the action is situated here; but a foreign corporation not doing business in Maryland cannot be sued here by any person, natural or fictitious resident or non-resident,—except as to any liability incurred or obligation created in favor of a citizen while it was formerly engaged in business here." *France's Elements of Corporation Law*, 442.

The record shows that the defendant was not transacting any business in the State of Maryland at the time the suit was brought, though it formerly had maintained an office here. Section 412, Art. 23, of the Code, provides for the service of process upon foreign corporations which have ceased to have an agent, etc., here, that is, ceased to do business here, only, however, in cases where the corporation while engaged in business in this State has incurred some liability within the State or made a contract with a resident of the State. If any authority for the validity of the service of process against this defendant in the case at bar is to be found, it must be found in this sec. 412. Except under the precise circumstances prescribed by the above section, a foreign corporation not doing business here, but which has a director who happens to be a resident of this State is no more subject to a suit in this State by service upon that director than is a foreign corporation not doing business here, but which happens to have an officer temporarily within the State, by service upon that officer.

The principle announced in *Crook* v. *Girard Iron Company*, 87 Md. 138, viz.: that a foreign corporation which has no office and is engaged in no business in a State cannot be sued in that State by serving process on its president or other officer, when temporarily present within such State, has been held to cover a case where the president or other officer resides within the State in which the attempted service was sought to be made. *Conley* v. *Mathieson Alkali Works*, 190 U. S. 406.

Section 412 has abrogated the general rule that a foreign corporation not maintaining an office and not engaged in business in a State cannot be sued in the Courts of that State to the extent of subjecting such corporation to process in this State under the circumstances therein provided. The existence of the circumstances prescribed by the statute is, therefore, jurisdictional, and it is incumbent upon any suitor who seeks to avail himself of the statute in an attempted suit against a foreign corporation to make it clearly appear that

the case is one strictly within its provisions. *Shivers* v. *Wilson*, 5 H. & J. 130.

There is not a particle of evidence in the record to show that the plaintiff was a resident of Maryland (which he was not) or to show in any other respect that this is a case cov-ered by the provisions of the statute, and, therefore, the jurisdictional facts are wholly lacking and the judgment by default must be stricken out.

The case at bar is a suit on an alleged contract alleged to have been made by a foreign corporation with a non-resident of this State. The plaintiff insisted below that the case was one in which liability has occurred within the State, and that this section 412 of the Code conferred jurisdiction upon the Courts of this State in all such cases even though the corporation should subsequently remove from the State, and irrespective of whether the plaintiff was a resident or a non-resident. The answer to this contention is, first,—it nowhere affirmatively appears in the record that this is a case in which the plaintiff is a resident (which he is not) or in which liability occured within this State before the corporation ceased to do business here, and these being jurisdictional facts must be shown; second,—that the word "liability" as used in this stacute is used in a limited sense and has no reference to the contracts; third,—that whether the word "liability" as used in the statute is used in a limited sense or not, the provisions of the statute are intended solely for the benefit of residents, and have no reference to non-resident plaintiffs. The contract in this case was not made with a resident of this State. It seems to us to be entirely clear that the provisions of section 412 can operate only in favor of residents of the State of Maryland. It is true that as the statute reads, the words, "with any resident of this State" do not necessarily from a purely rhetorical or grammatical point of view apply to the words "after any liability shall occur within the State." Grammatical construction of a statute however is not always in judgment of law to be followed. *Drennen* v. *Banks*, 80 Md., 310.

Section 412, does say and say plainly and unambiguously

that when a corporation removes from the State it remains liable upon obligations incurred within this State in favor of citizens of this State.   To extend the meaning of that section beyond this plain and unambiguous significance and to hold that such a corporation is also liable to suit at the instance of persons who are not citizens of this State would be an unwarranted extension and one in plain conflict with the general principles of the territorial theory of corporations promulgated in the case of *Bank of Augusta* v. *Earle*, 13 Peters, 519.

Even if we are wrong in supposing that the Legislature when using the words "after any liability shall occur within the State" intended them to apply only to residents precisely as in cases of contracts then it is submitted that the word "liability" in this section is used in a limited sense, and as synonymous with tort.   This would seem to follow from the ample provision made by the Legislature for liabilities arising *ex contractu* in the succeeding clause "or contract made." The words "contract made" cover any liability that could occur *ex contractu*; and it is hardly probable that the Legislature intended to include liabilities arising *ex contractu* in the limiting and narrow phrase "liabilities which shall occur within this State," and then immediately proceed to swallow that limiting phrase so for as liabilities *ex contractu* are concerned, by enacting a much wider provision in the words "contract made."    The view that the word "liability" as used in this section is intended to be synonymous with tort is apparent from an examination of the context.

SCHMUCKER, J., delivered the opinion of the Court.

The first of the cross appeals in this case is by William R. Boggs, the plaintiff below, from an order of the Superior Court of Baltimore City striking out upon terms a final judgment theretofore rendered in his favor against the Inter-American Mining and Smelting Company.   The second is by the said company, the defendant below, from an order of the same Court, refusing upon its application to lay a rule security for costs upon the plaintiff who was alleged to be a non-resident

of this State.    The two appeals were heard together and they
can be disposed of by one opinion.

The Mining Company was incorporated in the District of
Columbia, but for sometime prior to March 7th, 1906, its
office, where its records were kept and from which its general
business was transacted, was in the Calvert Building in Balti-
more, and during that time H. C. Turnbull, Jr., who did
business in Baltimore City and resided in Baltimore County,
was president of the corporation.    During the time that the
company was thus located in Baltimore City, its president,
purporting to act in its behalf, employed the plaintiff, Boggs,
as a mining engineer at a salary of $200. per month and per-
sonal and travelling expenses.

On May 28th, 1906, Boggs sued the company in the
Superior Court to recover his salary and expenses for Octo-
ber, November and December, 1905 and January, 1906,
amounting in the aggregate to $1,188.    The suit was brought
under and in conformity to the Rule Day Acts in force in
Baltimore City, and the defendant having been returned sum-
moned and, having failed to appear to the action or plead,
judgment by default was entered against it on June 27th,
1906.    On the same day the judgment by default was duly
extended for $1,188. and costs.

On October 17th, 1906, the company appeared by counsel
and moved to strike out the judgment on two grounds.    1st,
That it, being a foreign corporation, was never served with
summons within the meaning of the Maryland Statutes and
was therefore not properly in Court when the judgment was
rendered, and 2nd, that it was not amenable to this suit in
the State of Maryland, and the judgment and all of the pro-
ceedings are void for want of jurisdiction.

At the hearing of the motion to strike out the judgment
testimony was taken tending to prove that on March 7th,
1906, the company moved its office and papers and seal from
Baltimore to East Orange, New Jersey, and thereafter did not
conduct any business in Maryland, and that Wm. R. Sweeney
was elected president of the company to succeed Mr. Turn

bull, although the latter remained, and at the time of the in-
stitution of the suit was, one of its directors.　P. M. Gover, a
deputy sheriff of Baltimore City then testified that having
been directed to serve the writ in the case upon Mr. Turnbull
he went over to the Calvert Building and asked Turnbull if
he was one of the officers of the company, and he replied that
he was not, but had formerly been its president.　To the best
of witness' recollection Turnbull said that he knew the plain-
tiff Boggs and would like to see him get what was due him.
The deputy reported this interview to the sheriff, who told
him to serve the writ on Turnbull, as he was one of the
directors and the deputy went back to do it but Turnbull shut
the door in his face and would not let him serve it.　The
deputy further swore that he explained his object to Mr.
Turnbull and the latter saw the writ, and said he was doing
what he could to get Mr. Boggs righted in the matter, or
something to that effect.　He, the deputy, did not read the
writ to Mr. Turnbull, but he explained it to him and Turn-
bull looked at the writ.

Thatcher Bell, another Deputy Sheriff, testified that he was
told by the Sheriff to go over to the Calvert Building and
serve the writ on Mr. Turnbull, that Gover had not been able
to get a service.　Witness went over to Turnbull's office with
the copies ready to serve and said to Turnbull "I have a paper
to serve on you."　Turnbull said "I know what you have,"
and started to go out.　Witness reached for Turnbull with the
copies and when the latter kept running, he commenced to
read them, but Turnbull got into the next room and slammed
the door.　Witness then laid the copies on the table and re-
turned to the Sheriff's office.　He left the copies of the *narr.*,
notice to plead and writ in this case on the table in Turnbull's
office.　Mr. Turnbull was put on the stand and his account
then given of the visits of the two Deputy Sheriffs to him
substantially corroborated their testimony except he denied
that he said to the deputy Bell that he knew what he had or
that he (Turnbull) saw or looked at the writ.　There was also
evidence tending to show that Mr. Turnbull never reported

the service of the writ on him to the company or took any steps himself looking to a defense of the action, and that the motion had been promptly made by the company when it learned of the suit and judgment.

Assuming that Turnbull was a proper person upon whom to serve the writ and other papers, we are indisposed to consume much time in discussing the sufficiency of the service. It is apparent from the evidence that Turnbull was fully informed as to the institution of the suit by Boggs against the company and the desire of the Sheriff to summon the company by serving the papers on him as one of its directors and knew that the deputy was about to make that service when he attempted to elude him and evade the service by running out of the room and slamming the door in the officer's face. Neither he nor the company he represented, if he did represent it for the purpose of the service, can be permitted to set up such a state of facts in support of the motion to strike out the judgment. He might as well have remained in his office and put his fingers in his ears while the deputy read the writ to him, and then claimed to be without information as to its contents or purpose. Defendants have frequently sought to evade or defeat service of process upon them by flight or refusal to accept the process handed them by the serving officer but the Courts have held such efforts futile. *Davison* v. *Baker*, 24 How. Prac. 42; *Slaught* v. *Robbins*, 13 N. J. L. 349; *Borden* v. *Borden*, 63 Wis. 377; *Baker* v. *Carrecton*, 32 Me. 334.

The laws of this State do not prescribe precisely how a summons shall be served upon an individual defendant. The service must be a personal one, 2 *Poe, Pleading and Practice,* section 62, but the Sheriff is not *required* to read the writ to the defendant, although it is usual for him to read it or explain its nature and leave a copy of it with the person served. Secs. 409 to 412 of Art. 23 of the Code provide for service of process upon corporations.

Sec. 409 provides that any foreign corporation which shall transact business in this State "shall be deemed to exercise franchises" here and "shall be liable to suit in any of the

Courts of this State on any dealings or transactions therein."

Sec. 410. Authorizes process against a domestic corporation to be served on any president, *director*, &c.

Sec. 411. Provides that suit may be brought in any Court in this State against any foreign corporation "deemed to hold and exercise franchises in this State," by a resident of this State on any cause of action and by a non-resident plaintiff when the cause of action has arisen in this State, and that process in such suits may be served as provided in sec. 410, or it may be served, in the manner prescribed, upon any agent of such corporation.

Sec. 412 provides that if *any corporation*, embraced in the preceding section after any liability shall occur within this State or after any contract shall have been made by it with any resident of this State, shall cease to have any agent within the State and no president, *director* or manager or the corporation *can be found within the State*, then in such case, service of any writ or process from the Courts of this State may be had on the person who was last the agent of such corporation, and the statute in such case further provides for the service of copies on the officers of the company wherever they may be found in cases where the writ has been served on the last agent.

These sections when properly construed together provide, among other things, that where *any* corporation domestic or foreign shall, while transacting business in this State, incur a liability here or make a contract with any resident of this State and shall thereafter cease to have an agent here, service of any writ or process issuing from the Courts of this State, in respect to such liability or contract may be made upon the president or any director or manager of the corporation if he can be found in this State. In other words that if a foreign corporation comes here and transacts business and incurs liabilities here it shall *quoad* those liabilities remain subject to the jurisdiction of our Courts even though after incurring the liabilities it may have removed its office and business to another State. With these laws upon our statute book staring it in the face the defendant came here and transacted business

and in the course of that business incurred the liability for the enforcement of which the present suit was instituted.   It cannot now be heard to say to the Courts of this State that no jurisdiction for the purposes of this suit was acquired over it, by service of process according to our laws upon one of its directors residing within this State, because since incurring the liability it has moved its office into another State.

"If a State permits a foreign corporation to do business within her limits, and at the same time provides that in suits against it for business there done process shall be served upon its agents, the provision is to be deemed a condition of the permission; and corporations that subsequetly do business in the State are to be deemed to assent to such condition as fully as though they had specially authorized their agents to receive service of the process."   *St. Clair* v. *Cox*, 106 U. S. 350.   The Court below in our opinion acquired jurisdiction over the defendant in this suit by the service of the process upon its resident director, Mr. Turnbull.

In cases where the Court has jurisdiction over the subject-matter and the parties, "when the provisions of the Rule Day Acts have been conformed to and a judgment regularly entered thereunder it will not be stricken out upon motion of the defendant unless some reason be shown why the defendant was prevented from appearing and making defense in accordance with the requirements of the statute or upon some ground of fraud, surprise or mistake."   *Mueller* v. *Michaels,* 101 Md. 191; *Griffith* v. *Adams*, 95 Md. 170; *Coulbourn* v. *Boulton*, 100 Md. 350; *Gemmell* v. *Davis*, 71 Md. 458. When as in the present case a motion to set aside a judgment is made after the term at which it was rendered the proof of fraud, surprise or mistake must be clear and convincing.   *Abell* v. *Simon*, 49 Md. 318; *Smith* v. *Black*, 51 Md. 247; *Siewerd* v. *Farnen*, 71 Md. 627.   There being an absence from the record before us of proof of any of the grounds whose existence is essential to warrant the vacating of the judgment the learned Judge below erred in passing the order striking it out, and that order must be reversed.

The appeal from the order refusing to require the plaintiff to furnish security for costs must be dismissed.

That order was not final in its nature nor did it settle any substantial right of the appellant or deny to it the means of further defending the suit. *Gittings* v. *State*, 33 Md. 461; *Chappell* v. *Funk*, 57 Md. 479. Furthermore it does not appear from the record that the plaintiff is in fact a non-resident of the State. It is so stated in the application for the rule for security for costs but the application was made *ex parte* and was not sworn to nor accompanied by admission, affidavit or. proof of the fact of his alleged non-residence.

> *Order striking out the judgment reversed with costs. Appeal from the order refusing to lay rule security for costs dismissed with costs.*