501 A.2d 432

**James D. WILLIAMS, Jr.**

v.

**Nancy Grube WILLIAMS.**

**No. 29, Sept. Term, 1985.**

Court of Appeals of Maryland.

Dec. 16, 1985.

See also 492 A.2d 649.

Hal Witt (Sachs, Greenebaum & Tayler, of counsel, on the brief), Chevy Chase, for appellant.

James J. Cromwell (J. Bradford McCullough and Beckett, Cromwell & Myers, P.A., on the brief), Bethesda, for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ.

SMITH, Judge.

We shall here hold that a chancellor properly entered a judgment against a former husband in favor of a former wife in the amount of $58,748.81 for back payments under a separation and property settlement agreement between the parties approved by the circuit court but not incorporated into the divorce decree.

I

Under date of November 21, 1979, James D. Williams, Jr., and Nancy Grube Williams, then husband and wife, entered into a separation and property settlement agreement covering a number of matters. It included the sum to be paid to the wife by way of alimony and certain expenses of the wife. By its terms the agreement was not to "be incorporated or merged" into any divorce decree, the "parties m[ight] enforce the terms of this agreement independently of such judgment under the terms [t]hereof," and the agreement was "not [to] be modifiable by any court."

On December 19, 1979, the husband was divorced a vinculo matrimonii from the wife by the Circuit Court for Montgomery County on the grounds of voluntary separation. The decree provided relative to the separation and property agreement:

"ORDERED, that the Separation and Property Settlement Agreement dated November 21, 1979, entered into by the parties be, and the same hereby is, ratified, approved and adopted insofar as this Court has jurisdiction but shall not be incorporated or merged herein . . . ."

On August 4, 1982, Mrs. Williams filed a petition in which she referred to the separation and property settlement agreement and alleged non-compliance by Mr. Williams with its terms. Mrs. Williams sought to have her former husband held in contempt for nonpayment of alimony, that he be ordered to pay the non-alimony arrearages which had accrued under the agreement, that the provisions of the agreement be specifically enforced, that she be awarded reasonable counsel fees, and that the court issue a rule requiring Williams "to appear and show cause if any he has why he should not be held in contempt . . . and why the relief prayed for should not be granted." A show cause order was passed. It specified that a copy of the verified petition and of the order be served on Williams on or before September 20, 1982. Counsel for Mrs. Williams directed that the show cause order be issued to a private process server. The affidavit of service of that process server recited service on August 30, 1982. That which took place was described initially in the affidavit of service and then, more specifically, in the supplemental affidavit of service where Kennedy, the process server, stated:

"Service upon the Defendant was achieved by the undersigned by leaving a copy of these documents at the Defendant's attorney's office, Sachs, Greenebaum & Tayler, located at 1620 Eye Street, N.W. Washington, D.C., after the Defendant, in an adjacent parking garage, twice identified himself to the undersigned, inquired as to the nature of the documents, began reading the documents,

then disavowed his identity, refused acceptance of the documents, and abruptly turned and walked away. These events transpired at Z Parking Garage, Inc., 1620 Eye Street, Washington, D.C. In a further attempt to evade service of process, the Defendant, followed by the undersigned, left the garage, entered the building and took the elevator up to his attorney's office. The Defendant identified himself as the above named Defendant to his attorney's receptionist while in the undersigned's presence. While in the attorney's office, Mr. Kennedy again attempted to hand the documents to the Defendant, but the Defendant again refused to accept them. Mr. Kennedy then informed the Defendant that he was leaving the documents in front of the Defendant on his attorney's receptionist's counter. Mr. Kennedy left the documents at the receptionist's counter and exited."

Pursuant to former Maryland Rule 323 Williams made a motion raising preliminary objection on two grounds, lack of subject matter jurisdiction and insufficient service of process. On the former issue he claimed the court lacked "subject matter jurisdiction to entertain [Mrs. Williams'] petition for contempt, because the agreement between the parties has not been incorporated into this court's decree." On the sufficiency of the service of process he asserted that the affidavits showed "that, in lieu of personal service on [Williams], service was attempted by leaving a copy of the documents at the office of Sachs, Greenebaum & Tayler, 1620 Eye Street, N.W., Washington, D.C. on August 30, 1982," when the appearance of that firm "as solicitors for [Williams] had ... terminated over two years previously." He further asserted as to sufficiency of the service of process that any claim for violation of the agreement "would have to be asserted by a new action at law, there would have to be original process issued, pursuant to the Maryland Rules." The motion raising preliminary objection was overruled.

In due season the matter was heard before a master whose report was duly submitted to the circuit court. It

sustained Mrs. Williams' exceptions to the report and recommendations of the domestic relations master on the issue of contempt, ordered that the matter be remanded to the master to determine the extent to which Williams was then able to pay his arrearages in support, found him in arrears in the amount of $58,748.81, ordered that judgment be entered against him in that amount, and denied the request of Mrs. Williams for counsel fees.  An appeal to the Court of Special Appeals followed.

## II

The intermediate appellate court in an unreported opinion (No. 377, September Term, 1984, decided Dec. 3, 1984) held because there had been neither merger nor incorporation of the agreement into the decree "the chancellor erred in his findings that the agreement could be enforced through contempt proceedings."  It held "without merit" the argument "that since the agreement was not incorporated into the divorce decree the equity court had no jurisdiction to enter a judgment," citing *Zouck v. Zouck*, 204 Md. 285, 292, 104 A.2d 573, 576 (1954); *Eigenbrode v. Eigenbrode*, 36 Md.App. 557, 559, 373 A.2d 1306, 1308 (1977); *Jackson v. Jackson*, 14 Md.App. 263, 268, 286 A.2d 778, 781 (1972).  It said:

> "The case *sub judice* was clearly one in equity as appellee petitioned the Court for specific performance of the property settlement agreement and to have appellant held in contempt for violating the alimony provisions. 'It is a well established principle that once an equity court has acquired jurisdiction, it may, in proper circumstances, render a money decree arising out of the issues litigated.' *Hardisty v. Kay*, 268 Md. 202, 211–12 [299 A.2d 771] (1973); *see, Charles Co. Broadcasting v. Meares*, 270 Md. 321, 329 [311 A.2d 27] (1973)."

We granted Williams' petition for a writ of certiorari. The contempt issue is not before us, there having been no cross-petition on behalf of Mrs. Williams.

## III

Williams asserts:

"The first problem with the reasoning of the Court of Special Appeals is that the equity court here had not acquired jurisdiction at all. Since, as the Court of Special Appeals held, the agreement had not been incorporated in the divorce decree, the divorce case had terminated, and there was no basis for asserting jurisdiction over the husband by mere service of a petition and rule to show cause upon his former attorneys in the District of Columbia. If the wife wished to commence an equity proceeding for specific performance, she was required to file a new proceeding and obtain jurisdiction over the husband by service of process upon him."

We have no problem relative to the trial court's jurisdiction. Service was not upon Williams' attorneys as Williams asserts, but upon him, a resident of the State of Maryland. Execution of the process was by a private person pursuant to former Rule 116. As noted earlier, the motion raising preliminary objection was on two grounds, lack of subject matter jurisdiction and insufficiency of service of process.

The service of process was sufficient. The facts are similar to those before the Court in *Boggs v. Mining Co.*, 105 Md. 371, 66 A. 259 (1907):

"Thatcher Bell, another Deputy Sheriff, testified that he was told by the Sheriff to go over to the Calvert Building and serve the writ on Mr. Turnbull, that Gover had not been able to get a service. Witness went over to Turnbull's office with the copies ready to serve and said to Turnbull 'I have a paper to serve on you.' Turnbull said 'I know what you have,' and started to go out. Witness reached for Turnbull with the copies and when the latter kept running, he commenced to read them, but Turnbull got into the next room and slammed the door. Witness then laid the copies on the table and returned to the Sheriff's office. He left the copies of the *narr.*,

notice to plead and writ in this case on the table in Turnbull's office." 105 Md. at 384, 66 A. at 260–61. The Court there said:

"Neither he nor the company he represented, if he did represent it for the purpose of the service, can be permitted to set up such a state of facts in support of the motion to strike out the judgment. He might as well have remained in his office and put his fingers in his ears while the deputy read the writ to him, and then claimed to be without information as to its contents or purpose. Defendants have frequently sought to evade or defeat service of process upon them by flight or refusal to accept the process handed them by the servicing officer but the Courts have held such efforts futile. *Davison v. Baker,* 24 How.Prac. 42 [39]; *Slaught [Slaght] v. Robbins,* 13 N.J.L. 349 [340]; *Borden v. Borden,* 63 Wis. 377 [374, 23 N.W. 573]; *Baker v. Carrecton [Carleton],* 32 Me. 334 [335]." 105 Md. at 385, 66 A. at 261.

█ Williams did not raise the issue of insufficiency of process, that is that he should have been served a subpoena rather than a show cause order, as a ground for his motion. See former Rule 323 a 3. His failure to do so constituted a waiver of that defense. See former Rule 323 b.

### IV

Williams says, "The second flaw in the reasoning of the Court of Special Appeals lies in its reliance on the principle that once an equity court has acquired jurisdiction it may, in proper circumstances, render a money decree arising out of the issues litigated."

A well recognized principle of law is that once equitable jurisdiction has attached the equity court will give full and complete relief in order to avoid circuity of action, even though the relief ultimately given is relief ordinarily granted at law by way of a monetary judgment. *C.W. Jackson & Associates v. Brooks,* 289 Md. 658, 666–67, 426 A.2d 378, 382 (1981); *Charles Co. Broadcasting v. Meares,* 270 Md. 321, 329, 311 A.2d 27, 32 (1973); *Hardisty v. Kay,* 268 Md.

202, 211–12, 299 A.2d 771, 776 (1973). In essence Williams does not dispute this proposition of law but is of the view that it could not come into play because the trial court was not presented with a request cognizable by equity inasmuch as the Court of Special Appeals determined that nonpayment under the agreement could not be a basis for holding Williams in contempt.

It will be recalled that one of the forms of relief sought by Mrs. Williams was specific performance of the agreement. It was this upon which the Court of Special Appeals rested its conclusion that there was relief sought of the trial court cognizable in equity, citing *Zouck*, 204 Md. 285, 104 A.2d 573.

█ Generally speaking courts do not decree specific performance of agreements to pay money. *Zouck* makes clear that an exception to this exists in agreements between husband and wife for payment of alimony or support. *Zouck* involved an agreement not incorporated into a divorce decree. In that case Judge Hammond said for the Court:

"Traditionally, equity has had, and exercised, jurisdiction as to separation agreements between husbands and wives and, in appropriate cases, has specifically enforced payment of maintenance, including both that due and unpaid and that to be paid in the future." 204 Md. at 292, 104 A.2d at 576.[1]

In that case Judge Hammond carefully reviewed for the Court various English holdings and holdings in other states. Then the Court said, "The Maryland rule does not differ from the general rule." 204 Md. at 295, 104 A.2d at 577. This was followed by a review of Maryland authorities. The Court then said:

"A court of equity will not require specific performance, as a matter of course. It will evaluate the conduct

---

1. In *Shacter v. Shacter*, 251 Md. 304, 247 A.2d 268 (1968), n. 1 at 251 Md. at 306, 247 A.2d at 269, Judge Hammond quoted for the Court this language from *Zouck* and said it was the holding of *Zouck*.

of the parties, the circumstances and the equities of each particular case. It will not use its discretion to grant the remedy unless its exercise will subserve the ends of justice and the result of its assistance is fair, just and reasonable. We think that the Court did not err in finding the contract in the instant case met the standards necessary for specific performance. Zouck did not deny the execution of the agreement or claim that it was procured by fraud or duress. He did not challenge the fairness of the amount he agreed to pay nor claim that he was unable to pay it, or that its payment would be a hardship on him." 204 Md. at 296, 104 A.2d at 577–78.

To similar effect see *Schlemm v. Schlemm,* 31 N.J. 557, 581–82, 158 A.2d 508, 522 (1960); *Gibson v. Gibson,* 49 N.C.App. 156, 158, 270 S.E.2d 600, 602 (1980); 24 Am.Jur.2d *Divorce and Separation* § 857 (1983). It follows, therefore, that specific performance of the agreement in question as to support payments was cognizable by a court of equity. Thus, the equity powers of the court having been properly invoked, equity had the power to render a money decree arising out of the issues litigated.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.