# THE MUTUAL LIFE INSURANCE COMPANY OF BALTIMORE *vs.* MAGGIE THOMAS.

*Life Insurance—Proof of Death Held Not to Have Been Waived.*

The beneficiary in a policy of life insurance furnished to the insurer a certificate of the death of the insured by which it appeared that the latter had been suffering from a disease which the beneficiary had warranted him in the application not to have been afflicted with.    The insurance company refused to pay the claim on that ground.    In an action on the policy it was shown that the certificate of death supplied by the plaintiff related to some other person than the insured, but that fact was not known by the insurer at the time.    *Held*, that there had been no waiver of the proof of death, and since plaintiff had not furnished such proof within the time prescribed by the policy there can be no recovery in this action.

Appeal from the Baltimore City Court (WRIGHT, J.)

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*W. Hall Harris* and *Paul M. Burnett*, for the appellant.

*Martin G. Kenney* (with whom was *Thos. C. Ruddell* on the brief), for the appellee.

FOWLER, J., delivered the opinion of the Court.

This action is based on a policy of insurance on the industrial line issued by the Mutual Life Insurance Company of

Baltimore, the defendant, on the life of one William Ambross. Maggie Thomas, the plaintiff, who represented herself as the cousin of the insured, is the beneficiary named in the policy. In the application for the policy in answer to the question whether the insured had ever suffered from consumption she answered "no." She gave answer to the question whether the insured was in sound health, that he was. The policy was issued without any medical examination and solely upon the faith of the truth of the representations of the applicant. Her answers are made warranties by the terms of the policy as well as by the application. In her application she gave the name of the assured as "William Ambross," and his address as 701 W. Lombard street, Baltimore, and his occupation as that of a tailor. The policy provided for the payment of a weekly premium of fifteen cents. The sum stipulated to be paid upon the death of the insured is $160. He died January the 9th, 1904, and thereupon the payment of the policy was demanded by the plaintiff. She testified that she called at the office of the defendant company and was informed she would have to supply proofs of death. For this purpose the superintendent of the company furnished her with a blank for the doctor to fill up, which blank was filled by Dr. Friedenwald and returned by her to the company's office. Upon an examination of the physician's statement it was ascertained that he had given the name of the deceased as Winces. Umbroses, that he certified that the cause of his death was pulmonary tuberculosis and that he had been attended at St. Agnes Hospital in 1902. The plaintiff was requested to get another "proof of death" from the attending physician at St. Agnes, but this she refused to do. However it was subsequently obtained through her counsel who doubtless knew the defendant had a right under the policy to require additional proof. It appeared from this paper which was prepared and signed by Dr. T. W. Keown, attending physician, that the name of the deceased was Vincent Ambrose and that he had been treated at St. Agnes Hospital from May to October, 1902, for pulmonary tuberculosis. It will be observed that

there is some discrepancy in the name as given in the statements made by the two attending physicians.   In the first the deceased is called Winces Umbroses and in the second Vincent Ambrose while in the application and policy, as we have seen, the name is given as William Ambross.   But these discrepancies, especially the one which appeared in Dr. Friedenwald's statement, were overlooked by the defendant believing that the proofs of death both referred to the insured.   But more especially was this the case with the first, because the plaintiff had herself produced it as proof of the death of the person named in the policy.   In addition to this the age and occupation given in both statements agreed with that of the insured as given in the application.

Under these circumstances the insurance company refused to pay the policy.   This refusal was based upon the fact that the proofs of death showed the insured died with "consumption" and had been treated for that disease in St. Agnes Hospital from May to October, 1902, prior to the date of the policy, while the plaintiff in the application declared the insured had never suffered from that disease.

The application provides as follows: "The undersigned hereby declares and warrants that the answers made below are strictly true; and they shall form the basis and become part of the contract of insurance; that any untrue answer will render the policy null and void, and that said contract shall not be binding upon the company unless at date of the actual delivery of the policy to the insured or his agent the insured is alive and in sound health."

There was a judgment for the plaintiff and the defendant appeals.

The record contains five bills of exceptions; but the first was waived when at the close of the plaintiff's testimony the Court refused to withdraw the case from the jury, and the defendant proceeded with the trial.  The same question however is presented by the other exceptions, and that is whether the plaintiff's evidence was legally sufficient to warrant a recovery. This is the only question we will discuss.

It is conceded that the only defect in the testimony is found in the proofs of death, and we will therefore, consider the effect of these "proofs" without referring to the other testimony in the case—except so far as it may relate particularly to them.

The uncontradicted evidence offered by the plaintiff showed that the name of the insured was William Ambrose, although the name given in the application was Ambross; that he was never known by any other name; that he was never known as Vincent Ambrose, as called in Dr. Freidenwald's proof of death; that he was never sick and never at St. Agnes Hospital; that she had met the insured at a marriage sometime during the months of May and October, when, according to the testimony, Vincent Ambrose was at St. Agnes Hospital being treated for consumption; that Vincent Ambrose was another man. It was thus shown by the plaintiff that the proofs of death had no application whatever to the insured. It appears therefore that while the plaintiff herself supplied the proofs of death she, for the first time at the trial of the case, entirely repudiated them, and by so doing deprived herself of the very proof, without which the policy provides no action can be maintained. It was upon this theory that the defendant again at the close of the testimony on both sides asked the Court to withdraw the case from the jury. It is perfectly clear that if there were no such proof in evidence, the defendant's prayer to that effect should have been granted unless in some way its right under the policy to demand proofs of death had been waived. There is nothing to be found in the testimony to show that the defendant did not believe, until the trial, that these proofs related to the insured. It had every reason to entertain such a belief. Indeed a few days after "the proofs" were put in its possession, its president wrote to plaintiff's counsel saying the refusal to pay was based upon the ground that *the proof which the plaintiff supplied* showed that the insured was afflicted with consumption before the policy was issued. That was the time, if ever, when the plaintiff should have repudiated the proofs, so that she could

have availed herself of the ample time then existing to supply, if possible, what was absolutely necessary to entitle her to recover. But surely it cannot be contended, under the circumstances of this case, that a waiver of the production of the necessary proofs resulted, in the absence of evidence that the defendant knew or had any reason to know that the proofs actually supplied by the plaintiff had no relation to the insured. Nor can it be said in this case, as was suggested by plaintiff's counsel, that a waiver of the requirement to produce proofs of death resulted because the refusal to pay was put upon grounds other than a failure to produce such proof. It is well settled, of course, as was said in *McElroy* v. *Hancock Ins. Co.*, 88 Md. 149, that an absolute refusal to pay grounded on the merits of the case; a denial of *all* liability or a negotiation with the insured without objecting to the proof of death has each been held to constitute a waiver. In the case just cited the letter relied on as constituting a waiver was written by the defendant to the plaintiff and reads thus: "The papers (proofs of death) in themselves are correct enough but the company has decided not to recognize the claim under this policy." We held there was nothing in this letter to show a reliance on failure to prove death as required, but on the contrary we said the only reasonable inference to be drawn from this language is that without reference to any objection based on proof of death, the defendant had some other meritorious defense on which it intended to rely. But here the case is entirely different—for as soon as the proofs of death were exhibited to this defendant it wrote to plaintiff's counsel that her claim would not be paid because it appeared by the proofs that the plaintiff had given false answers to the questions in the application in that she swore the insured never had consumption and the proofs show he was treated for that disease prior to the date of the policy. It seems to us, therefore, necessarily to follow that when the plaintiff had repudiated the proofs of death and had shown by uncontradicted testimony that they had no relation to the insured, the case should have been withdrawn from the jury as requested by the defendant.

What we have said disposes of the case, and it follows that the judgment appealed from must be reversed.

*Judgment reversed without a new trial.*

(Decided June 22nd, 1905.)