**NATIONAL BANK OF COMMERCE & TRUST CO. OF PROVIDENCE v. NORTHWESTERN MUT. LIFE INS. CO.**

**No. 488.**

District Court, D. Rhode Island.
Sept. 20, 1946.

S. Everett Wilkins, **Jr., of** Providence, R. I., for plaintiff.

Daniel H. Morrissey and James H. Hagan (of Tillinghast, Morrissey & Flynn), all of Providence, R. I., for defendant.

HARTIGAN, District Judge.

This is a civil action brought by the National Bank of Commerce and Trust Company of Providence, as trustee, a national banking association duly organized under the laws of the United States and having a principal place of business in Providence, Rhode Island, against The Northwestern Mutual Life Insurance Company, a corporation organized under the laws of the State of Wisconsin, to recover the proceeds of two policies of insurance.

The first policy, No. 3147117, executed December 31, 1941, insured the life of Harry T. Peters in the sum of $21,000, which the defendant upon receipt of due proof of death of the insured, promised to pay at its home office "to the direct beneficiary as provided in the supplement attached to this policy and made a part hereof."

The second policy, No. 3208789, was executed December 31, 1942, also insuring the life of Peters in the sum of $46,300, and was payable "as provided in the supplement attached to this policy and made a part hereof." Both are retirement endowment policies. The premiums on the first policy are payable for ten years or until prior death of the insured, and premiums on the second policy are payable for thirteen years or until prior death of the insured.

The supplement attached to policy No. 3147117 is as follows:

"The Northwestern Mutual Life Insurance Company Milwaukee, Wisconsin

"Supplementing and amending Part I of application No. 89405 P for a policy on the Retirement Endowment plan, the undersigned Applicant hereby designates the National Bank of Commerce and Trust Company, Providence, Rhode Island, a corporation organized and now existing under the laws of the United States, Trustee, or its successors in trust, of the Fram Corporation Bonus and Profit Sharing Trust, as direct beneficiary under said policy and as payee in event the policy matures as an endowment.

"It is understood and agreed:

"(1) The power to exercise all the rights and privileges specified in said policy and/or conferred by its terms upon the insured shall be vested solely in said Trustee, or its successors in trust, including but not limited to (a) the right prior to or at the time this policy shall become payable by the death of the insured within the Endowment period to revoke the designation of direct beneficiary and to designate individual direct beneficiaries and contingent beneficiaries and to elect the method of settlement, and (b) the right to designate the insured as payee at the end of the Endowment period with settlement under the Retirement Life Income Option as provided on the first page thereof; but no one shall be designated as direct beneficiary or contingent beneficiary except as permitted by law, and no settlement option in lieu of payment in one sum shall be elected for any beneficiary or payee not a natural person taking benefit in his or her own right. All policy and application provisions inconsistent herewith are suspended.

"(2) The Insurance Company shall not be bound by any change or succession of Trustee unless written notice with satisfactory proof of such change or succession, accompanied by this policy for suitable endorsement, is filed at the Home Office of the Company prior to or at the time this policy shall become payable.

"(3) The Insurance Company may conclusively assume and shall not be affected by any notice to the contrary that said Trustee, or its successors in trust, has full power and authority to receive and receipt for any money becoming due and payable to said Trustee according to the terms of this policy and to exercise the rights and privileges as hereinbefore provided; and, acting in reliance thereon, the Insurance Company shall be fully protected against any claims or demands whatsoever by any person or persons claiming any right, title

or interest under or by reason of this policy or said trust.

"Said Insurance Company is hereby requested and directed to make the foregoing provisions a part of said policy.

"Executed in dupli-   Advisory Board Of
cate.          The Fram Corpo-
                  ration Bonus And
                  Profit   Sharing
                  Trust; Applicant

Harry T. Peters    By Harry T. Peters
--------------------------------------------
Person Proposed   Authorized Mem-
for Insurance      ber."

The supplement attached to policy No. 3208789 is the same except as to the application number and the signature of the authorized member of the Advisory Board of the Fram Bonus and Profit Sharing Trust.

It is admitted that all premiums provided for in said policies were paid when due and that said Harry T. Peters died April 23, 1944, and thereafter due notice of death of Peters was furnished to the defendant in accordance with the provisions of said policies and that demand for payment was made August 30, 1944.

It is also admitted that on December 29, 1941, the plaintiff entered into a certain trust agreement with Fram Corporation, a Rhode Island corporation, which trust agreement is known as "Fram Corporation Bonus and Profit Sharing Plan," (hereinafter referred to as the Plan). Ex. 1.

The plaintiff contends that the contract of insurance is controlling and requires payment to the named beneficiary as trustee and that the terms of the trust allowed the trustee to elect to have the proceeds payable to it.

The defendant contends that certain terms of the trust agreement under which the plaintiff holds these policies require the Advisory Board or the trustee, pursuant to the direction of the Advisory Board, to request an option settlement under which the proceeds will be retained by the defendant and made payable to the beneficiary in installments and that it is the duty of the insurance company to make payment only in that manner.

The only question involved in this case is in respect to the manner of payment of said policies. The defendant admitted its willingness to pay the proceeds of the policies to the plaintiff if the widow of Harry T. Peters would sign a release.

The Plan is voluntary on the part of the Fram Corporation and is divided into four parts. Part I is entitled "Creation of Plan" and the plaintiff is designated as trustee. Part II is entitled "Advisory Board to Administer Plan." Part III is entitled "Terms of Trust". Part IV is the "Schedule of Initial Trust Beneficiaries" and Peters is named one of the beneficiaries.

Part II, (2) provides:

"(2) The Advisory Board shall have the sole power, duty and responsibility to direct the administration of the Plan in accordance with the provisions herein set forth and shall act as the majority of the members or any member, designated in writing by the majority shall decide. No member of the Advisory Board shall be liable to any Beneficiary or any person claiming under a Beneficiary, or to the Company, by reason of the exercise of his discretion hereunder and any and all directions by the Advisory Board shall be binding and conclusive on all parties concerned. All decisions of the Advisory Board as to the facts of any case and the meaning or intent of any of the provisions of the Plan, or of any rules or regulations and their application to any case, shall be final and conclusive."

Part II, (4), sub-paragraphs 4 and 5 provide:

"The Advisory Board shall cause the policy to be endorsed or amended by supplemental agreement to provide for payment of the proceeds of the policy upon maturity, both in the event of the survival of the Beneficiary and in the event of his death; however, the said Board shall cause legal ownership and control of the policy or policies to be vested in the Trust in such manner and form as the Board shall decide; and no person, whether Beneficiary or claiming under a Beneficiary, shall have any legal right in such policy or policies ex-

cept with the consent of the Trustee, as directed by the Advisory Board.

"The endorsement or supplemental agreement providing for payment of the proceeds may be changed at any time by the Trustee at the direction of the Advisory Board, as provided in the trust agreement; however, unless the proceeds are paid to the Beneficiary or his dependents, or heirs, the policy shall provide for payment to the Trust. In directing the manner in which the proceeds shall be payable, the Advisory Board shall select the method, that, in its judgment, will best provide for the Beneficiary and his dependents or heirs; and the said Board shall consider the wishes of the Beneficiary, but shall not be bound by them."

Part II, (8), sub-paragraph 2 provides:

"Upon the death of a Beneficiary while he is employed by the Company in good standing, the Advisory Board shall cause the policy or policies on the life of the Beneficiary, or other property held for his benefit, to be made payable to such of his dependents or heirs and in such manner as, in the judgment of the said Board, will best provide for their financial security, with reversion to the Trust of any amount that may remain after the death of all of the parties so designated."

Part III, Article I, paragraph 3 provides:

"It is hereby specifically provided that no trust property, policies, nor any beneficial interest hereunder, shall revert to the Company or inure to its benefit; also, the Trust is purely voluntary on the part of the Company and the Company may change, suspend or discontinue payments to the Trust at any time, or, from time to time, as the Company may decide. Neither the establishment of the Plan or Trust nor any modification thereof, nor the creation of any fund or account nor the payment of any benefits shall be construed as consideration to any employee for employment or for remaining in the employment of the Company or as giving any employee of the Company or any person whomsoever any legal or equitable rights, as against the Company, the Trustee or the Advisory Board, except as expressly granted to them, as provided herein; or as giving any employee the right to be retained in the service of the Company; and all employees shall remain subject to discharge to the same extent as heretofore, or discontinuance as Beneficiaries hereunder."

Part III, Article III, paragraph 2 provides:

"The Trustee shall accept the legal ownership of such policy or policies, as may be delivered to the Trustee by the Company or the Advisory Board on the lives of Beneficiaries, in such form and with rights as the Company or Advisory Board shall direct. The Trustee shall have, and, when directed by the Advisory Board, shall exercise all of the rights of a legal owner with respect to the policies hereunder and shall make such disposition of the said policies as the Advisory Board shall direct; and without limiting the general powers herein given, the Trustee shall have the right to change the successively change the persons named therein to receive the proceeds, apply policy dividends, make policy loans, surrender policies for cash, convert to paid-up or extended term insurance, collect the proceeds, designate any mode of settlement of the proceeds that the insurance company may allow, and convert policies from one form to another." (sic)

Part III, Article III, paragraph 5 provides:

"The acts of the Trustee hereunder shall be binding and conclusive on any insurance company and no company shall be required to take cognizance of the provisions of this instrument; nor shall any company question the authority of the Trustee or any person or corporation, acting with the written consent of the Trustee, to do any act with respect to the insurance, endowment or annuity policies hereunder. An insurance company may also conclusively assume, and shall not be affected by any notice to the contrary, that the Trustee, or any successor in trust, has full power and authority to receive and receipt for any money becoming due and payable to said Trustee under any of said policies, according to their terms, and to exercise the

rights and privileges as herein provided; and, acting in reliance thereon, said insurance company shall be fully protected against any claim or demand whatsoever by any person or persons claiming any right, title or interest under or by reason of said policy or said Trust."

James E. Bigwood testified that following the death of Peters, as authorized member of the Advisory Board, he gave instructions to the trustee relative to the disposition of the policies on Peters' life which were payable to The National Bank of Commerce and Trust Company, as Trustee, to collect the proceeds of the policies on behalf of the trust. He further testified that this was the manner of payment on these policies which in the judgment of the Board would best provide for the financial security of Peters' dependents.

In cross-examination Bigwood admitted that there is nothing in the minutes of the meeting of the Advisory Board which contains any directions to the trustee concerning these policies and that the Advisory Board had no vote relative to instructing the trustee.

When asked: "Have you any vote in the minutes of the Advisory Board in which you have taken action concerning the application of the proceeds of these policies?" he answered "I don't remember that there is."

Bigwood also testified:

"Q. Well, has the Advisory Board taken any action which appears in the minutes of the Advisory Board to cause the proceeds of these policies to be made payable to the heirs or dependents of Harry T. Peters? A. Not in the minutes.

"Q. It is not in the minutes. Has the Advisory Board of the Fram Corporation, to your knowledge, ever advised the defendant in this case, Northwestern, concerning any action which has been taken under that paragraph? A. Well, we originally asked Northwestern to pay their policy to the trust.

"Q. Who asked it? A. I did.

"Q. Whom did you ask? A. Mr. Eugene T. Lothgren. (General agent of defendant.)

"Q. And I am asking you, have you notified Northwestern that you have taken any action under that paragraph to cause the policies to be payable to the dependents and heirs? A. I haven't personally but I think our attorney—

"Q. But you have no knowledge of it? A. No.

"Q. Has the Advisory Board taken any action which appears in the minutes to make arrangements which will best provide for the financial security of the dependents or heirs of Harry T. Peters? A. Not in the minutes."

I find no provision in the trust agreement that indicates to me that there is a duty imposed upon the Advisory Board to notify the insurance company of what action it has taken relative to making payment of the proceeds of the policies to Peters' dependents or heirs.

Part II, (8), sub-paragraph 2, imposes no mandatory duty upon the Advisory Board to inform the defendant which one of the option settlements under the policies should be paid by defendant to Peters' dependents or heirs. It will be noted in this provision that in addition to policies on the life of the beneficiary held for his benefit that "other property held for his benefit" might be made payable to such of his dependents or heirs and in such manner as in the judgment of the said Board will best provide for their financial security.

It seems to me that it is the intent of the trust agreement that the trustee should collect the proceeds of the policies and pay the beneficiary's dependents or heirs in such manner as in the judgment of said Advisory Board will best provide for their financial security.

Part III, Article III, sub-paragraph 5 of the trust agreement specifically states that "The acts of the Trustee hereunder shall be binding and conclusive on any insurance company and no company shall be required to take cognizance of the provisions of this instrument, nor shall any company question the authority of the Trustee or any person or corporation acting with the written consent of the Trustee, to do any act with respect to the

insurance, endowment or annuity policies hereunder."

The policies were taken out in accordance with the provisions of the Plan and the Advisory Board elected that the trustee should be the beneficiary and should receive the proceeds and administer them under the trust. The trustee is under a duty to administer the proceeds of these policies in the same manner as it would administer other property which it might hold in the trust for Peters' benefit.

In Smith v. Missouri Val. Life Ins. Co., 22 Fed. Cas. pages 610, 611, No. 13,083, the court said: "The case before the court, in any view of the Missouri statute as to the respective rights of the plaintiff and the creditors of the husband, is easy of solution. The agreement of the defendant in the policy is, 'to pay the amount assured to Augusta S. Smith.' This gives her the right to sue upon the policy in her own name. If she recovers, it is a different question whether she may not hold the proceeds of the recovery, or some part thereof, for the benefit of the estate of her husband, if necessary to pay debts. The company cannot set up such supposed rights in others, to defeat an action on the policy. The plaintiff, having the legal title, may maintain the action, and this will protect the company from another suit, and in the event of a recovery by her, the equities of others, if any exist, which I do not decide, can be adjusted in an action between them and the plaintiff. The administrators of the husband are not here insisting upon their rights, if they have any, and the company cannot set up rights for them, and, on its motion, introduce into this suit matters with which it has no concern. I am of opinion the plaintiff is entitled to recover. * * *" See also McElroy v. John Hancock Mut. Life Ins. Co. of Boston, 88 Md. 137, 41 A. 112, 71 Am.St.Rep. 400.

In Capuano v. Boghosian, 54 R.I. 489, 491, 175 A. 830, 831, the court said: "The legal rights of a designated beneficiary in an insurance policy—whether it be a straight or an industrial life policy—are dependent on the terms of the contract of insurance. The intention of the parties,

as evinced by their contract of insurance, is to be made effective. * * *"

The plaintiff in the instant case is the direct beneficiary under both contracts of insurance and is entitled to payment of the face amount of them.

Judgment, therefore, may be entered for the plaintiff for $67,300, with interest from August 30, 1944, together with costs.