JAMES W. McELROY, Permanent Trustee in Insolvency of JOSEPH DORSEY vs. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY OF BOSTON, MASS.

*Life Insurance—Right of Assignee of Policy Holding Part of Equitable Ownership—What passes to Trustee in Insolvency—Time of Furnishing Proof of Death—Waiver of Defects in Proof of Death—Appeal—New Trial.*

An assignee of a policy of life insurance who has the whole legal title and only a part of the equitable interest therein is entitled to maintain an action on the policy in his own name, and the defendant cannot set up as a defence that the plaintiff does not own the entire beneficial interest.

The trustee in insolvency of the assignee of a life insurance policy who held the legal title and a part of the equitable interest is entitled to maintain an action on the policy.

Property in which the insolvent held the legal title and some of the beneficial interest while other parties also have equitable interests therein, passes to the trustee in insolvency.

A policy of life insurance provided that " notice of the claim and proof of death shall be submitted to the company within ninety days after the decease." *Held,* that this stipulation does not defeat the claim of the plaintiff suing on the policy when he did not know of its existence or of the death of the insured until more than a year after such death, and promptly notified the company after acquiring knowledge of his rights.

Failure to furnish to a life insurance company proof of death within the time limited by the policy is waived when the company makes a proposal to settle, or denies its liability absolutely, or asks for additional proof without making the objection that the proof, as given, was not furnished within due time.

When a judgment is reversed for error in a certain ruling and the cause remanded for a new trial, this Court may pass upon another question in the case and going to the root of the action which will necessarily arise upon the new trial.

Appeal from the Court of Common Pleas (HARLAN, C. J.).

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER and ROBERTS, JJ.

*Frank Gosnell* (with whom was *T. M. Lanahan* on the brief), for the appellant.

This suit was properly brought in the name of the trustee in insolvency of Joseph Dorsey, because the insolvent, had (by virtue of the assignment from himself, as executor, to himself individually,) *the entire* legal title to the policy, and as one of the residuary devisees and legatees under his father's will, he also had an undivided one-fifth *beneficial interest* therein absolutely; moreover

he had an absolute *beneficial interest* in the proceeds of the policy to the extent of the premiums paid by him out of his own private funds to keep it alive, all of which passed to the appellant as his trustee in insolvency. The permiums so paid, amounting to $1,002, with interest, together with his one-fifth in what remained, exceed *six-tenths* of the entire policy of $2,000. As between the appellant and the appellee, the suit is maintainable, no other party in interest objecting; on the contrary, they all testified in the case in favor of the appellant. This being so, whatever interest the other legatees of Daniel Dorsey may have in the policy, or its proceeds, can be worked out in the Insolvent Court after the recovery by the appellant. *Alexander* v. *Ghiselin*, 5 Gill 138; *Eschbach* v. *Pitts*, 6 Md. 75; *Bank of Westminster* v. *Whyte*, 3 Md. Ch. 508; *Cross* v. *Hecker*, 75 Md. 574; *Crocker* v. *Hopps*, 78 Md. 265.

There can be no doubt that under the agreement entered into at the time of the assignment of the policy from Joseph Dorsey, executor, to himself individually, he was entitled to be reimbursed any and all premiums paid by him upon the same, and he should be allowed interest thereon. 1 *Lewin on Trusts* (9 Ed.), 1032; *Clark* v. *Holland*, 19 Beav. 262; *Todd* v. *Moorhouse*, L. R, 19 Eq. 69; *Leslie* v. *French*, L. R., 23 Eq. 552; *Strutt* v. *Tippett*, 62 L. T. N. S. 474. He was at least entitled to the proceeds of the policy in the same proportion as the premiums paid by him bore to all premiums paid. *Brashears* v. *Met. Life Ins. Co.*, 1 App. Cas. D. C. 420.

*As to proof of death.*—A plaintiff has never been held to the *strict letter* of the contract, even where the *time* within which notice and proofs of death shall be given has been specifically designated and agreed upon. The tendency of the Courts has invariably been to take all the facts and circumstances of the case into consideration, and if it appears that the beneficiary has been ignorant of the death, or of the existence of the policy, the time has always been held to date from the acquisition of such knowledge. *Kentzler* v. *The Amer. Mu., etc., Asso.*, 88 Wis. 589; *Konrad* v. *Union Casualty, etc.*,

*Co.*, 49 La. Ann.; 21 Southern Rep. 721; *Trippe* v. *Prov. F. Soc.*, 140 N. Y. 23; *Globe Acc. Co.* v. *Gerisch*, 163 Ill. 630; *Coventry Mu., etc., Asso.* v. *Evans*, 102 Pa. St. 281, 284; *Ellis* v. *Mass., etc., Co.*, 43 Cal. 612.

*As to waiver of proof.*—Brief extracts from some of the authorities may not be amiss: " Where the plaintiff served proofs of death which were retained by the company without objection for 45 days, was held to be a waiver, and any objection to their sufficiency or form was also waived by the delay." *Jones* v. *Howard Ins. Co.*, 117 N. Y. 103. " If it appears that proofs of death were served upon an insurance company, and were retained by it until they were produced at the trial, the company is estopped from raising the question of their sufficiency." *Grogan* v. *U. S. Indust. Ins. Co.*, 90 Hun. 521, 525; S. C. 36 N. Y., Supp. 687, 689; *Burlington Ins. Co.* v. *Lowery*, 61 Ark. 108, 113. Where proof of death was made on blanks furnished by the Insurance Company, and the company retained them from the 29th of July until the 3d of April following, when it refused to pay the claim of the insured, the company was estopped from objecting to the proof of death as to its insufficiency. *Van* v. *Com. Travellers Ins. Co.*, 92 Hun. 256. The weight of the authority is in favor of the rule that a distinct denial of liability and refusal to pay on the ground that there is no contract, or that there is no liability, is a waiver of the condition requiring proofs of loss or death. It is equivalent to a declaration that they will not pay though the proof be furnished. *Life Ins. Co.* v. *Pendleton*, 112 U. S. 709. The Supreme Court of Michigan recently decided that : " An insurer waived a condition requiring notice of the accident to be given within a certain time, when it wrote to the insured asking for further information in reply to a notice sent by insured. *Hohn, Appellee* v. *Interstate Casualty Co. of N. Y.*, 72 N. W. Rep. 1,105. A demand by an insurance company for further proof is a waiver of the right to object to the failure of the insured to furnish proofs of loss within the time limited by the policy. *Merchants' Ins. Co.* v. *Gibbs*, (N. J.) 29 Atl. Rep. 485. See also

McELROY vs. JOHN HANCOCK LIFE INS. CO.   141

Md.]                    Opinion of the Court.

*Equitable, etc., Co.* v. *Winning*, 58 Fed. Rep. 548; *New York, etc., Co.* v. *Baker*, 83 Fed. Rep. 651.

*S. J. Harman* and *Charles H. Knapp*, for the appellee.

Joseph Dorsey, at the time of his application in insolvency, and at the time of his death, by virtue of the assignment to him, held the policy in its entirety, subject to the parol trust created by the agreement of the parties at the time the assignment was made; and this being so, the title to the policy, at the time of Joseph Dorsey's death, vested in his administrator, subject to the trust. *Duffy* v. *Calvert*, 6 Gill 517.

Although Annie J. Dorsey was not notified of the grounds of the company's objection until about four months after the notice of claim and proof of death had been received by it, the silence of the company for the time mentioned would not operate as a waiver. *Patrick* v. *Farmers' Ins. Co.*, 43 N. H. 621; *Muller* v. *S. S. F. I. Co.*, 87 Pa. St. 399; *McDermott* v. *Lycoming Ins. Co.*, 44 N. Y. 221; *St. Louis Ins. Co.* v. *Kyle*, 11 Mo. 278. This is not a case of where an insurer refused to pay on some particular ground, and thereafter shifted his position and put his refusal for the first time on some other ground; and even if it was such a case, the refusal to pay on some other ground would not be a waiver, where the *notice is after due.* *Biddle on Insurance*, sec. 1135; *Brown* v. *Lond. Asso.*, 40 Hun. (N. Y.) 101; *Beatty* v. *Lycoming Ins. Co.*, 66 Pa. St. 9; *Blossom* v. *Lycoming Ins. Co.*, 64 N. Y. 162.

FOWLER, J., delivered the opinion of the Court.

The John Hancock Mutual Life Insurance Company of Boston, Massachusetts, on the 23rd of May, 1877, in consideration of the payment of an annual premium of $118 insured the life of Paul E. Dorsey in the sum of $2,000 for his own benefit. The policy was made subject to the laws of Massachusetts, which provide " that notice of the claim and proof of death shall be submitted to the Company within ninety days after the decease." On the first of June, 1877, the insured assigned the

142 McELROY vs. JOHN HANCOCK LIFE INS. CO.

Opinion of the Court. [88

policy to his brother, Daniel Dorsey, of Baltimore, and the assignment was duly assented to by the company. Daniel Dorsey, the assignee, died in the year 1885, and in the same year on the 14th of August his will was admitted to probate in the Orphans' Court of Baltimore City. By this will he devised and bequeathed all the rest and residue of his estate to his son, Joseph Dorsey, and his daughter, Annie J. Dorsey, and to them in trust for his two grandchildren. The proportions of the estate devised to each and the particulars of the trust are not important to be considered here. It is sufficient to say that nowhere in the proceedings in the Orphans' Court as to the estate of Daniel Dorsey does it appear that the policy assigned to him was distributed or even mentioned in the inventory. The estate of Daniel Dorsey having been fully administered, and the executor, Joseph Dorsey, having passed his final account, he, as executor, assigned to himself individually the policy with the assent of the company and also with the full consent of all the beneficiaries. It appears from the evidence that at the time of this transfer the two grandchildren being minors, and having no means with which to pay their share of the premiums, and the remaining person interested in the policy, Annie J. Dorsey, being also unable to pay her share of maintaining it, it was agreed by all the parties in interest that the assignment should be made to Joseph Dorsey, and that he should pay the premiums out of his own money and that upon the death of the assured the proceeds of the policy were to be divided according to the respective interests. This assignment to Joseph Dorsey was fully ratified and adopted by the minors after they arrived at age. It is admitted that all the premiums were duly paid up to and including that due on 22nd of May, 1894. The premium due the 22nd of May, 1895, was not paid, but the payment of the premiums prior thereto, it is admitted, kept the policy in force until the 22nd of May, 1896. The premiums paid by Joseph Dorsey with his own money amounted to $1,002.00, and the whole amount of premiums actually paid is equal or nearly so

to the face value of the policy.   In 1891, Joseph Dorsey became insolvent, and the plaintiff, James W. McElroy, was appointed his permanent trustee in insolvency. Joseph Dorsey died in May, 1895, and although his sister knew he had gone into insolvency, she took out letters on his estate in order to get at a box in the Safe Deposit Company which he and she, during his life, had held jointly, and she testifies that she attempted to collect the insurance claim because she supposed that was the proper way to do it.   However, this fact is of no importance except to explain how it happened that she, as administratrix, and not the trustee in insolvency, took the initial steps to obtain payment of the policy, and furnished proof of death.   The insured died at the Home of Incurables in the State of New York on the 19th of June, 1895; but this fact was unknown to Miss Dorsey for nearly a year, so that it was impossible for her to comply literally with the provision of the Massachusetts law which required proof of death to be given " within 90 days after the decease."   But as soon as she received information of the death of the insured she notified the local agent of the company and he sent her blanks for proof of death which she filled up.   These were objected to and returned to her because they were not correct, and other blanks were sent to her by the company and these were also filled up and sent to the company, in whose hands they have remained ever since. On the 16th of October, 1896, about four months after the proofs were furnished, a letter from the local agent in Baltimore was received by her containing the information that the company would recognize no claim under the policy, proofs not having been submitted in accordance with the Massachusetts statute applicable thereto, and that the company did not consider that she had any interest in the policy.   Whereupon she consulted counsel, who appealed to the company to settle the claim without regard to technical objections.   But this appeal was in vain.   On the 3rd of November the company wrote counsel that it had nothing to add to its letter of October 16 to his client, and that there was

144 McELROY vs. JOHN HANCOCK LIFE INS. CO.

Opinion of the Court. [88

no defect in the formal proofs. This correspondence was closed on the 24th of November, 1896, by a letter from the company saying that it had nothing further to say regarding the matter. Miss Dorsey, as administratrix of her brother, and as surviving trustee under her father's will, made another effort to collect the amount she considered justly due on the policy, and through the second attorney she consulted she ascertained that the plaintiff, James W. McElroy, was trustee in insolvency of her brother, and was the proper person to prosecute a suit for the recovery of the insurance money. The plaintiff testifies that in February, 1897, he became aware for the first time of the existence of the policy, and of the death of the insured; that this information came to his knowledge from Miss Dorsey's " visit to the office of his associate; that witness took up the matter, and upon investigation found that Joseph Dorsey had applied for the benefit of the insolvent law of this State in 1891, and that witness was his trustee; that he put himself in communication promptly with the company." On the 9th of February, 1897, two days after learning the facts we have just stated, Mr. McElroy wrote to the local agent in Baltimore informing him that he had only recently learned of his interest in the policy and asking him if the proofs of death furnished by Miss Dorsey as administratrix, etc., were in due form; and if not what was necessary to be done by him as trustee in order to collect the insurance money. The agent forwarded this letter to the company at Boston, and in a few days Mr. McElroy received a reply in which the company says: " You are correct that Miss Dorsey filed the papers to prove the claim under this policy and claimed the money. *The papers in themselves we think are correct enough,* but the company has decided not to recognize the claim under this policy, and Miss Dorsey has placed it in the hands of John H. Thomas, etc. We think it might be well for you to see Mr. Thomas, and see whether Miss Dorsey is intending to enter suit as intimated in his letter. Until this matter is settled we are unable to give you any definite information in regard to this case."

Mr. McElroy replied that unless some satisfactory ar-
rangement for settlement could be made he would enter
suit.   He was then informed for the first time by the
company that according to the provisions of the Massa-
chusetts statute, under which the policy was issued and
continued in force, " there was *strictly speaking* no
claim, the proof not having been filed within 90 days of
death."   But the company closed their letter with an
offer to settle both the claim of the trustee and of the
administratrix by the payment of the sum of $652, de-
claring, however, that it was under no legal obligation
to pay this sum.

This suit was brought in the usual form by the plain-
tiff as trustee in insolvency of Joseph Dorsey to re-
cover the amount claimed to be due on the policy.   The
defendant pleaded the general issue.

We have stated the facts at length which were offered
in evidence by the plaintiff, for the reason that at the
close of his case the learned judge below instructed the
jury " that under the pleadings in this case the plaintiff
has produced no evidence legally sufficient to enable
him to recover, because the undisputed evidence shows
the trustee in insolvency has no such interest in the
policy sued on as enables him to maintain this suit."

There are two other questions which, though not
passed upon below, we will consider and dispose of
because they will necessarily arise in a retrial of the
case, and if the contention of the defendant company be
correct as to these other questions it would be useless
to order a new trial even though there may be error in
other rulings of the Court.   *Lycoming Fire Ins Co.* v.
*Langley*, 62 Md. 215.

The first of these questions is, were the proofs of
death under the circumstances of this case sent to the
company in time; and second, if not was there a waiver
by the company of the requirement as to furnishing
proof of death within 90 days after death?

The verdict and judgment were in favor of the defend-
ant on the instruction of the Court, and the plaintiff has
appealed.

1. Has the plaintiff trustee such an interest in and title to the policy sued on as entitles him to bring this suit? It is manifest from the evidence we have fully stated that Joseph Dorsey, the plaintiff's insolvent, held the entire legal title to the policy. This he held under the assignment by himself as executor to himself in his own right. But he was also entitled absolutely as one of the residuary legatees under his father's will to an undivided fifth. In addition to holding the entire legal title by assignment and the beneficial interest as legatee, the insolvent was also entitled to an absolute interest in the proceeds of the policy to the extent of the premiums paid by him for the other beneficial owners of the policy. It is not important now to ascertain with exactness the extent of such interests of the insolvent, but it is sufficient that he had such substantial interests in the subject of controversy, and of this there is no doubt under all the evidence in the case, and the law applicable to it. Nor do we think there can be any doubt that the interests in, as well as the legal title to, the policy which were vested in the insolvent passed to the plaintiff as trustee under the operation of the insolvent law, for the benefit of his creditors. It was suggested that the interest of the insolvent in this policy passed to his administratrix. But this view is in conflict with what has been, from *Alexander* v. *Ghiselin*, 5 Gill 180, down to the most recent decisions of this Court, declared to be the spirit and intent of our insolvency system, namely, that *all* of the estate of the insolvent should be administered in the insolvent Court. And the fact that others may have either legal or equitable rights in or to the estate or property, the legal title to which is in the insolvent, will not prevent the insolvent Court from adjudicating all questions that may arise, that Court having full power to determine the legal and equitable rights of the parties. *Crocker* v. *Hopps*, 78 Md. 265. But where the insolvent holds the *bare legal title*, without any beneficial interest whatever, his trustee cannot possibly take from him anything which is of any value to the creditors;

McELROY vs. JOHN HANCOCK LIFE INS. CO. 147

Md.]          Opinion of the Court.

and it may well be held that under such circumstances, nothing, not even the legal title, passes to the trustee in insolvency. This distinction is drawn in *Rhoades* v. *Blackiston*, 106 Mass. 336, where it is said: " If, however, the bankrupt has *any* beneficial interest in the avails of the suit, then the whole legal title rests in his assignee, and the action must be in his name, for there cannot be two legal owners of one contract at the same time." See also *Low* v. *Welch*, 139 Mass. 33. The defendant has attempted to assail the validity· of the assignment of the policy to the insolvent, and thus show that his trustee in insolvency has no better title. In order to do this he contends that the evidence shows that some of those who assigned to the insolvent were infants and that those infants and their aunt, Miss Dorsey, owned the larger part of the policy. But the evidence also shows that if the assignment was made by minors they ratified it fully after arriving at age. Nor do we think the evidence shows that the insolvent held merely as trustee. The remarks of JUDGE DILLON, who delivered the opinion of the Court in *Smith* v. *Mo. Valley Life Ins. Co.*, 4 Dill. 353, etc., are particularly applicable to the position assumed by the defendant in this branch of the case. He said: " The Company cannot set up such supposed rights in others to defeat an action on the policy. The wife having the legal title, may maintain the action, and this will protect the Company from another suit, and in the event of recovery, the equities, if any exist, which I do not decide, can be adjusted in action between them and the plaintiff. The administrators of the husband are not here insisting upon their rights, if they have any, and the Company cannot set up rights for them, and on its action introduce into this suit matters with which it has no concern."

The plaintiff, therefore, having the legal title to, and also a large beneficial interest in the policy, he was the proper party to bring this suit.

2. The second question we shall consider is whether under all the circumstances of this case the defendant can escape liability by the defence that the proofs of death were not furnished within ninety days after death?

148   McELROY vs. JOHN HANCOCK LIFE INS. CO.

Opinion of the Court.                    [88

Whatever may be said in regard to the failure or negligence of the administratrix in not giving earlier notice and proof of death, she having been the first of those interested in the policy to hear of the insured's death, it can hardly be said, we think, that the *plaintiff* was guilty of any negligence whatever in this respect.   It appears that two days after he first heard that his insolvent held the policy, he promptly proceeded to inform the company of his rights, and to inquire if the proofs of death then already in its hands were in due form, and if not what was necessary for him to do as trustee, etc., in order to collect the proceeds of the policy for the insolvent estate of Joseph Dorsey.   He was informed by the defendant *that the papers (proof of death) were correct enough,* but that the claim would not be recognized. No new or additional proofs of death were ever asked for from the plaintiff, but on the contrary he was informed that those which had been sent were correct.   But very soon after its first letter to the plaintiff, the defendant told him that the proofs then in its hands had come too late.   Of course, it was useless after that to attempt to supply any additional proof.   Under these circumstances, and it appearing that the plaintiff never, until a few days before he made his claim had any, the least information of the existence of the policy, nor any reason to induce him to make an investigation to discover if his insolvent had such an asset, can it be said either upon reason or authority that *he* or the creditors he represents, should be bound by the ninety day provision of the Massachusetts law?   It is perfectly clear that the rule was made for the ordinary cases where the existence of the policy, and the death of the insured are known or might or should be known in time to comply with the rule.   It cannot reasonably be supposed that the holder of the policy could be required to give proof of a fact of which he was himself ignorant.   " To decide that one was not duly diligent, and that he lost his right as beneficiary because he did not give notice of a policy of which he knew nothing would be more strict and exigent than in our opinion the language of the policy requires.   There

was timely notice given after the fact of insurance came to the knowledge of the plaintiff.   This delay in finding the policy was not strange and unexceptionable.   On the contrary, it appears to have been entirely consistent with good faith."   *Konrad* v. *Union Casualty Co.*, 49 La. Ann. 21 Southern Rep. 721.   See also *Globe Accident Co.* v. *Gerish*, 163 Ill. 623; *Kentzler* v. *The Am. Mutual Asso., &c.*, 88 Wis. 589.   In the case last cited, although the facts were different from those we are considering, yet the reasoning and the general principles announced may well be applied here.   The Court said: " A contract should not be so construed as to defeat or render nugatory the rights of one of the parties to it, unless the language employed imperatively requires such construction.   In other words an interpretation which gives effect is preferred to one which makes void.   Besides a contract should be interpreted in view of the conditions necessarily implied by law."   As we already said, it would be unreasonable to require the plaintiff to have given the defendant notice or proof of facts of which he was ignorant, and which he could not have been reasonably expected to know before the day on which he received the information from Miss Dorsey.

3. But, independent of this view, we think there is ample evidence in this cause to establish a waiver by the defendant of the failure to send proofs of death within 90 days from the death of the insured.

The following grounds or any one of them have been declared to be sufficient to constitute a waiver of any defect in, or defence arising out of failure to duly give notice and proof of death: " A proposal to settle "; " an absolute refusal to pay on the merits "; " a denial of all liability "; " a negotiation with the insured, without making the objection of defective proof of death." *Bliss on Life Insurance*, sec. 268; *Cooke on Life Insurance*, p. 118.   In its letter to the plaintiff the defendant said: " The papers in themselves are correct enough, but the company has decided not to recognize the claim under this policy."   Not a word here to indicate that its refusal to pay *the plaintiff* was because of want of season-

able proof of death.   On the contrary the only reasonable inference to draw from this language is that without reference to any objection based on the proof of death, it had some meritorious defence on which it intended to rely.   But, again, the defendant made a direct proposal to settle the claims of both the plaintiff and the administratrix of the insolvent, by the payment of the sum of $652.   *Caledonia Fire Ins. Co.* v. *Traub*, 86 Md. 86.   And in addition to this it may be fairly said that the defendant negotiated with the plaintiff without making the defence now relied on.   It is true it subsequently relied upon this defence, but when it wrote the letter of the 15th of Feb. to him it neither directly nor indirectly placed its refusal to pay upon want of proper proof of death.   The letter closed thus: "We think it might be well for you to see Mr. Thomas, and see whether Miss Dorsey is intending to enter suit as intimated in his letter.   Until that matter is settled we are unable to give you any definite information in regard to this case." The information asked for by the plaintiff was to know if the proofs of death sent by Miss Dorsey were in due form, and if not what he should do to perfect his claim. If the defendant intended to rely upon the defence it *now* sets up it should have said so.   But it not only refrained from saying anything on the subject, but promised to give definite information after the dispute with Miss Dorsey had been disposed of.   Why promise to give definite or any information if this defence was to be relied on?

In May, 1896, Miss Dorsey sent proofs and they were returned to her *for further information,* and during the same month the additional proof was forwarded.   On the 23rd of June it was approved by the medical examiner of the company.   In the case of *Interstate Casualty Co. of N. Y.* v. *Hohn*, 72 N. W. Rep. 105, the Supreme Court of Michigan said: "An insurer waived a condition requiring notice of the accident to be given within a certain time, when it wrote for further information." *Bliss on Life Ins., supra; Cooke on Life Ins. Co., supra; Merchants' Life Ins. Co.* v. *Gibbs,* 29 Atl. Rep., 486.   This

defendant retained the additional or corrected proof of death without objection from June until the 16th of October, some four months, when it wrote the letter of the latter date. This of itself constitutes a waiver of any objection to delay in sending proofs of death. *Jones* v. *Howard Ins. Co.*, 117 N. Y. 103.

Without prolonging this opinion by the citation of further authorities, our conclusion is that the judgment must be reversed.

*Judgment reversed and new trial awarded.*

(Decided June 29th, 1898.)