HILL ET UX. *v.* BENEVICZ ET AL.

[No. 63, September Term, 1960.]

*Decided January 12, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Charles J. Stinchcomb,* with whom were *S. Alfred Mund*
and *Julius G. Maurer* on the brief, for appellants.

*Joseph L. Broccolino, Jr.,* for Frank Benevicz, et ux., two
of the appellees, and by *James N. Phillips,* with whom were
*Phillips, Sloan and Krause* on the brief for Addison Realty
Company, the other appellee.

BRUNE, C. J., delivered the opinion of the Court.

The plaintiffs-appellants, Willie Hill and Margaret Hill,
his wife, brought this suit at law to recover a $1,000 down
payment made by them as purchasers under a contract to
purchase a property known as 1503 Ellwood Avenue in Balti-
more. The defendants-appellees are Frank Benevicz and Rita
Benevicz, his wife, as sellers of the property, their agent Addi-
son Realty Company to which the plaintiffs' down payment
was made, and Carl A. Robinson, an officer of the corporate
defendant. The case was tried before the trial court, without
a jury, and resulted in a judgment for the defendants, from
which the plaintiff appeals.

The sales contract was dated December 30, 1957. It pro-
vided, among other things: (a) that the property was subject
to an annual ground rent of $90 [which capitalized at 6%

would amount to $1,500]; (b) that the sale price was to be $10,500, of which $1,000 had been paid; (c) that an additional down payment of $200 was to be made at or before the time of settlement; (d) that the remaining $9,300 was "to be financed by a Federal Housing Administration (F.H.A.) guaranteed mortgage in [the] same amount," the salient terms of which were stated; (e) that "the lending institution," which was neither named nor identified, should "have to 90 days to arrange settlement, from the date hereof." The contract also contained an integration clause and a provision stating "time being of the essence of this Agreement."

Since F.H.A. mortgage financing was contemplated and since there had been no F.H.A. appraisal prior to the time of execution of the contract of sale, the following provisions, intended to comply with § 1715 q of Title 12, U. S. C. A., and F.H.A. regulations issued thereunder and by virtue of § 1715 b of the same Title, were included in the contract:

> "It is expressly agreed that notwithstanding any other provisions of this contract, the purchaser shall not be obligated to complete the purchase of the property described herein or to incur any penalty by forfeiture of earnest money deposit or otherwise unless the seller has delivered to the purchaser a written statement issued by the Federal Housing Commissioner setting forth the appraised value of the property for mortgage insurance purposes of not less than $12,000 in fee simple which statement the seller hereby agrees to deliver to the purchaser promptly after such appraised value etc. is made available to the seller.
>
> "The purchaser shall, however, have the privilege and option of proceeding with the consummation of this contract without regard to the amount of the appraised valuation made by the Federal Housing Commissioner."

These provisions are almost verbatim in the terms prescribed by the relevant F.H.A. form (sometimes referred to below

as "the F.H.A. appraisal clause") and the first sentence quoted is virtually identical with provisions involved in *Griffith v. Scheungrab,* 219 Md. 27, 30, 146 A. 2d 864. In that case failure to furnish an F.H.A. certificate of appraisal to the purchaser was held to bar the seller from specific performance of the contract of sale of realty where F.H.A. financing was to be obtained. The appellants rely heavily on that case, but there, unlike the present case, no F.H.A. appraisal was obtained at all. (Indeed, it appeared impossible in the locality and at the times involved to obtain F.H.A. mortgage financing on the terms stated in the original contract, which would have prevented specific performance at the suit of the seller even under the original contract, apart from the amendment requiring the furnishing of an F.H.A. appraisal. See Note 1, 219 Md., p. 33.) Here there was an F.H.A. appraisal, and an F.H.A. insured mortgage on the terms specified in the contract of sale was obtainable within the time fixed for settlement. The principal question here is whether or not the purchasers were discharged from any obligation to go through with the purchase because of failure of the sellers to furnish them with a copy of the F.H.A. certificate of appraisal promptly after the certificate became available to them.

We shall attempt to summarize the relevant facts, many of which are not in serious, if any, dispute. The contract of December 30, 1957, was executed by both of the Hills and both of the Beneviczes to replace a prior contract for the sale of the same property executed in August, 1957, which had expired or was about to expire. The earlier contract had also contemplated F.H.A. mortgage financing, which apparently had not been procurable prior to the expiration of that contract.

It appears that F.H.A. commitments to insure mortgages are issued only to mortgagees approved by the F.H.A. and are not issued directly to persons such as the buyers or sellers of the property in the circumstances here involved. An application for a mortgage commitment is submitted to the F.H.A. by an approved mortgagee and, in a case such as this, it must be accompanied by a copy of the contract of sale and by a

supplement executed by or on behalf of the proposed mortgagors giving a good deal of information, including credit information. An appraisal fee must be paid, and an appraisal is then made of the property in question by or on behalf of the F.H.A. Assuming that the F.H.A. is willing to issue mortgage insurance in connection with the proposed sale, it issues a commitment to that effect to the approved mortgagee and also forwards with the commitment a certificate of appraisal. The form of certificate used in this case [1] includes certain instructions, the statement of the F.H.A. appraised value of the property, and a "Mortgagor's Certification" to be executed by the purchaser (mortgagor) at the time of settlement. The original and a duplicate copy of this certificate were to be delivered to the purchaser-mortgagor and the duplicate copy was to be signed by him at the foot of the "Mortgagor's Certification" and was to be delivered by the mortgagee to the F.H.A., in a case such as this, with the closing instruments. There were three different forms of certification and the appropriate one was to be checked. Here the appropriate one was that reciting that "The FHA Statement of Appraisal value was not received by me prior to my signing the contract to purchase, but the contract to purchase contained the following language: * * *." Here follow provisions substantially identical with those inserted in the Hill-Benevicz agreement to comply with F.H.A. requirements, which we have already quoted.

On January 16, 1958, Mr. Hill accompanied Mr. Robinson to the office of James W. Rouse Co., Inc. (Rouse) for the purpose of obtaining F.H.A. insurance of the proposed mortgage, and executed, on behalf of himself and his wife, the required supplement to the mortgagee's application for a commitment. (No question is raised as to his authority so to act on behalf of his wife.) Hill did not have the money to cover the appraisal fee of $25.00, but Robinson put it up apparently shortly after he and Hill visited Rouse. Rouse processed

1. There seem to have been a number of changes in F.H.A. forms since February, 1958, but the substance of the F.H.A. appraisal clause has thus far remained unchanged.

the application in accordance with its usual procedure. It promptly obtained a credit report on Hill and submitted the application to the F.H.A. on February 5, 1958. A commitment, accompanied by an appraisal certificate showing a valuation of the property in fee simple at $12,000 (the minimum amount stated in the contract of sale) was issued to Rouse on February 27 and was received by Rouse the next day. Rouse at once gave the sellers' real estate agent, Robinson (or his company), notice of the F.H.A. approval of the proposed transaction.

Rouse's usual practice appears to be to submit applications to the F.H.A. for mortgage insurance in its own name, but to place the mortgage, when a commitment for insurance has been obtained, with one or another of the lending institutions for which it acts as mortgage correspondent, and which are themselves F.H.A. approved mortgagees. Rouse then takes the mortgage in its own name, assigns it to the lending institution and services the mortgage under a contract between Rouse and the lender, pursuant to which Rouse receives compensation. Rouse thus performs several functions in the transaction. It acts partly in its own interest, partly as agent for the lending institution and partly for the benefit of the prospective mortgagor and partly also for the benefit of the would-be seller, for without the mortgage financing the sale probably would not produce the cash consideration which he is seeking. All of these functions are well known in the business, and there is no question of an agent secretly serving his own interest or the interest of one principal to the detriment of another. There is, however, some room for question as to the extent or even the existence of Rouse's agency for some of the parties.

In this case Rouse obtained a commitment from one of its insurance company correspondents on March 18, 1958, to make the proposed mortgage loan. When notice of this fact was given to the sellers or their agent or to the purchasers is not clear; but on March 27th, Rouse sent a notice to the Hills that settlement would take place on April 1st. This was countermanded by another notice sent on March 28th, which

moved it up to Monday, March 31st, 1958, presumably because of the ninety day time limitation in the contract. The Beneviczes' attorney also wrote the Hills a letter on March 29th notifying them of the settlement, which was delivered by a messenger to Mrs. Hill, who says she did not read it, but turned it over to her lawyer. On March 31st the Hills did not appear for the settlement. Robinson then took a copy of the F.H.A. appraisal certificate to the office of Mr. Mund, counsel for the Hills, and, as the trial judge expressly found, then delivered it to Mr. Mund. Robinson then went to the home of the Hills, rapped on the door, but received no answer, and pushed a copy of the appraisal certificate under the door.

There is no dispute that the first actual delivery of a copy of the F.H.A. certificate of appraisal by the sellers or anyone acting on their behalf was that made by Mr. Robinson to Mr. Mund, the purchasers' attorney, on March 31st. The appel, lants' contention that this was not a compliance with the terms of the contract because it was not a personal delivery made by the sellers to the purchasers is quite unsustainable. *Bob Holding Corp. v. Normal Realty Corp.*, 223 Md. 260, 164 A. 2d 457. We think that this delivery by the sellers' agent to the purchasers' agent and attorney was sufficient. We therefore need not determine the sufficiency of the subsequent delivery of a copy by Robinson at the purchasers' home by shoving it under the door when he could get no response to his rapping. It seems, however, from the cloudy testimony of Mrs. Hill that this copy was received by the Hills on the day of its delivery at their home.

It is clear that the purchasers were informed of the time and place of the intended settlement (11:00 A.M., Monday, March 31, 1958, at Rouse's office), and that they refused to attend. It is obvious that if they had attended, the appraisal certificate would have been delivered to them then and there since the appraisal was in the possession of Rouse and a signed copy of the mortgagors' certificate appended thereto was an essential part of the F.H.A. mortgage insurance transaction. It is, we think, clear from the purchasers' testimony, as well as from that on behalf of the sellers, that the pur-

chasers were seeking to avoid fulfillment of the contract. Indeed, Mr. Hill admitted that when they received the first notice of the time appointed for settlement (which was subsequently advanced by one day) they consulted counsel to find out if they could get out of the sale. (Mrs. Hill's testimony on this point seems to us evasive.) They stayed away from the settlement and they refused to admit Robinson when he called at their residence the day before. The Hills patently were not complying with their implied obligation of cooperation in carrying out the contract. Such non-cooperation would clearly excuse the sellers from the obligation to deliver a copy at the time of settlement (which is a somewhat different question from that of their contractual obligation to deliver a copy promptly after it was made available to them). See *Griffith v. Scheungrab, supra; Alois v. Waldman,* 219 Md. 369, 375, 149 A. 2d 406; *Livingston v. Green Properties, Inc.,* 222 Md. 354, 357, 160 A. 2d 594; and the authorities cited in those cases. Cf. *Boggs v. Inter-American Mining and Smelting Co.,* 105 Md. 371, 385, 66 A. 259, where an attempt to avoid service of process by running out of the room and slamming the door in the face of a deputy sheriff was held not to defeat valid service.

We conclude (a) that there was a delivery of the appraisal certificate on March 31st, and (b) that even if there had not been, the sellers would have been excused from having to deliver a copy on that date by the purchasers' non-cooperation amounting to prevention. We now revert to the chief question of whether or not delay in delivery operated to discharge the purchasers from liability under the contract.

§ 1715 q of Title 12, U. S. C. A. provides in part: "The Commissioner is authorized and directed to require that, in connection with any property [such as that here involved] * * * which is approved for mortgage insurance * * * the seller or builder or such other person as may be designated by the Commissioner shall agree to deliver, prior to the sale of the property, to the person purchasing such dwelling * * *, a written statement setting forth the amount of the appraised value of the property as determined by the Commissioner."

The form of agreement prescribed by the Commissioner pursuant to this Section is, as noted, substantially that employed in the Hill-Benevicz contract. The purpose of the statute to protect the purchaser-mortgagor is evident, and has been recognized by this Court in *Griffith v. Scheungrab, supra,* and more recently by the United States Court of Appeals for the Fourth Circuit in *United States v. Neustadt,* 281 F. 2d 596 (certiorari granted, December 19, 1960, 364 U. S. 926, 29 U. S. Law Week 3189). In the *Neustadt* case, the United States was held liable under the Federal Tort Claims Act to a purchaser because of an appraisal for F.H.A. mortgage insurance which was negligently made. Neither *Griffith* nor *Neustadt* involved the precise point which we have here.

Questions of both Federal and State law seem to enter into the construction of the contract. We have been referred to no Federal case, nor have we found any, construing that part of the F.H.A. appraisal clause under which the sellers agree to furnish the F.H.A. appraisal statement to the purchasers promptly after it is made available to them. The situation is muddied by the undiscriminating inclusion of the "time being of the essence" clause. Since this is a printed part of the contract of sale, we think it a fair inference that the language emanates from the sellers' real estate agent, and hence is the sellers' language.

The trial judge took the view that Rouse was the agent of the purchasers with regard to procuring F.H.A. mortgage insurance and hence that delivery of the appraisal to Rouse was delivery to the purchasers. We agree that Rouse was their agent to procure an F.H.A. mortgage insurance commitment; but in view of the language of § 1715 q, *supra,* and of the form adopted by the Commissioner, we are unable to agree that the approved mortgagee was the agent of the purchasers to receive notice of the appraisal. The Commissioner, pursuant to the statute and by the explicit terms of the F.H.A. appraisal clause, elected to make it the duty of the sellers to deliver a copy to the purchasers, though he was, of course, thoroughly aware of the position of an approved mortgagee with regard to a purchaser. Clearly, Rouse did not consider

itself obligated to notify the purchasers of the receipt of the appraisal, as it almost surely would have done if it had thought itself their agent to receive the notice.

As an alternative ground of decision, the trial court also took the view that there was no proof that the appraisal certificate was made available to the sellers prior to March 31st. There was, however, evidence that Rouse notified the sellers' agent on or about February 28th that the appraisal had been received. This, we think, was equivalent to notice of that fact to the sellers, and we think it an inescapable inference that the sellers or their agent could have obtained the certificate or a copy of it from Rouse as soon as Rouse advised the agent of its receipt.

We shall not pause to consider whether or not the fact that an actual mortgage lender was not procured until March 18th would postpone the time for giving notice of the appraisal to the purchasers.

We agree, however, with the result arrived at by the trial court. There is testimony by Mr. Robinson, which we think is only vaguely and unconvincingly challenged by Mr. Hill, that he, Robinson, notified Mr. Hill by telephone about the middle of March that the appraisal had been received by Rouse and what the appraisal was. Both Robinson and Benevicz testified that they told Mr. Hill he could get the appraisal from Rouse. Hill received verbally all of the information which physical delivery of the certificate would have given him. We think that there was thus substantial performance of the seller's promise to deliver the certificate and that the purchasers waived literal compliance with the provision for actual and prompt delivery, (even assuming that the information was not promptly transmitted). Also, no possible damages to the purchaser by reason of a verbal instead of a written communication, or by reason of a failure to advise them of the appraisal at an earlier date, are even suggested.

There is room for serious question as to whether or not the "time being of the essence" clause magnified what would seem to be a promise of less than vital importance on the part

of the sellers to furnish the purchasers with the F.H.A. appraisal promptly, into a condition which the sellers had to perform in order to hold the purchasers liable under the contract of sale. See 3A Corbin, *Contracts*, § 715, where the learned author says of a clause making time of the essence of a contract: "What the court must know, in order to give effect to such a cryptic provision, is: What performance at what time is a condition of which party's duty to do what?" Later in the same Section he comments that "[s]uch an often repeated provision as this may be inserted in a contract without any realization of its significance; * * *." Cf. *Ady v. Jenkins* 133 Md. 36, 104 A. 178, where the rule was recognized that in mercantile contracts stipulations as to time are regarded as essential, but it was held that the failure of the purchaser to deliver by a specified date labels to be affixed to cans of corn to be packed by the seller, did not constitute a breach of a substantial part of the contract which would warrant the seller in refusing to perform his part of the contract.

We find it unnecessary to go into this question because of our conclusion that exact compliance with the terms of the sellers' obligation—whether it was a promise or a condition— was waived. When Mr. Hill was informed of the amount of the appraisal and that it was available through Rouse, he made no request for the delivery of a written copy of it and gave no notice of an intention to terminate the contract. We think that he in effect accepted the verbal statement as sufficient and thereby waived any delay in delivery and the physical delivery of the certificate of appraisal itself. *Eastover Stores, Inc. v. Minnix*, 219 Md. 658, 150 A. 2d 884; *Foard v. Snider*, 205 Md. 435, 109 A. 2d 101; 3A Corbin, *Contracts*, § 759.

In *Eastover Stores, Inc. v. Minnix, supra*, a dispute arose between an owner and contractor with regard to the construction of a building in a shopping center. The contractor requested an extension of time for completion of the work because of abnormal sub-surface water conditions, the need for additional piling and delay in obtaining structural steel (the latter being due primarily to a then recent strike). The

contract provided in part that no extension of time should "be made for delay occurring more than seven days before claim therefor is made in writing to the [owner's] Architect." The delay in furnishing steel had occurred much more than seven days before the extension was requested. The architect refused the extension, but did not assign as a reason for so doing the lapse of time before the request was filed. This ground of objection was not raised by the owner's pleadings or until after a hearing of the case in the trial court. The objection was held to have been waived. This court, in an opinion by Judge Prescott, there said (219 Md. at 672) : "There is nothing new or novel in waiver by conduct, writings and pleading or failing to plead. There has never been a comprehensive and fully satisfactory definition of waiver, but it is safe to say that estoppel is not an essential element of waiver in Maryland and waiver may take place after the time for filing notice or proof of loss in insurance cases. *McElroy v. John Hancock Mut. Life Ins. Co.,* 88 Md. 137, 149-151, 41 A. 112; *Fidelity & Casualty Co. v. Riley,* 168 Md. 430, 438, 439, 178 A. 250, and cases therein cited. It is unnecessary to formulate or state any precise rule on the subject that would apply to all cases and under all circumstances, and we need not discuss it at length; since this Court, through Judge Hammond, has recently had occasion to go into the matter quite thoroughly in the case of *Foard v. Snider,* 205 Md. 435, 446-451, 109 A. 2d 101."

See also *Chasanow v. Willcox,* 220 Md. 171, 151 A. 2d 748, in which a seller failed to give notice of forfeiture of a deposit, which he might have declared. There this court said that "the failure or refusal of the seller to give notice of forfeiture may in some instances constitute a waiver of the breach of the contract by the purchaser." (220 Md. at 177). See also *Evelyn v. Raven Realty, Inc.,* 215 Md. 467, 472, 138 A. 2d 898, where the waiver of a condition as to the time of payment is discussed and it is recognized that there is no need for consideration in order to create an effective waiver, and the distinction between a waiver and a promissory estoppel is also considered.

We find nothing in the F.H.A. statute cited or in the form of agreement prescribed by the Commissioner which would prohibit a waiver of the sellers' obligation to deliver a copy of the appraisal promptly. On the contrary, the prescribed form of agreement permits the purchaser, at his option, to waive the condition requiring an F.H.A. appraisal in not less than the amount specified in the contract and permits him to go ahead with the contract, if he elects to do so.

One contention which was suggested by the appellants in this court, but which was not made in the trial court, was that the settlement date of March 31, 1958, was ninety-one days after December 30, 1957, and therefore was beyond the ninety-day period allowed by the contract. Any objection on this score, too, we think, was waived by the purchasers. There is no claim or indication that they made any objection to the date fixed for the settlement when they were informed of it, nor did they even allege in their declaration delay in settlement as a ground for the present suit. On the contrary, the only breach of contract which they alleged was failure to deliver a copy of the appraisal promptly. We think that *Eastover Stores, Inc. v. Minnix, supra,* and the other authorities above cited as to waiver with regard to that matter are equally applicable to this, and we shall not repeat them here.

One final matter perhaps should be mentioned. The contract says nothing about a forfeiture of the down payment (which was to be applied as a part payment) or that the amount of such a payment should be retained by the sellers as liquidated damages. Whether or not it was necessary for them to do so, the sellers did offer proof of damages of not less than the amount of the down payment, and the purchasers have not challenged the ruling of the trial court in allowing the sellers to retain that amount, the challenge being to the sellers' right to retain any down payment at all. See *Quillen v. Kelley,* 216 Md. 396, 401-403, 140 A. 2d 517; *Alois v. Waldman, supra;* and compare *Great United Realty Co., Inc. v. Lewis,* 203 Md. 442, 101 A. 2d 881.

*Judgment affirmed, with costs.*