## GRAIN DEALERS MUTUAL INSURANCE COMPANY *v.* VAN BUSKIRK

[No. 39, September Term, 1965.]

60

*Decided December 27, 1965.*

The cause was argued before PRESCOTT, C. J., and HAM-MOND, MARBURY, BARNES and McWILLIAMS, JJ.

*Leonard E. Cohen,* with whom were *Frank, Bernstein, Gutberlet & Conaway* on the brief, for appellant.

*James E. Hogan,* with whom were *Arthur J. Hilland* and *Ferdinand J. Mack* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

The appellant, Grain Dealers Mutual Insurance Company (Grain Dealers), through an insurance broker, Finney Realty, Inc. of Martinsville, Virginia, issued an automobile policy, with a Virginia uninsured motorist endorsement effective September 30, 1961, to Earle K. Van Buskirk (Earle) who then lived at Ferrum, Franklin County, Virginia with his wife, Victoria B. Van Buskirk (Victoria) and their minor child, a girl of seven years of age. The Van Buskirks had lived in Ferrum for about one year, Earle being employed as an electrician by the General Electric Company in Salem, Virginia.

The automobile policy was effective for one year—from September 30, 1961 to September 30, 1962—and contained an endorsement entitled "Family Protection Against Uninsured Motorists" which obligated Grain Dealers to pay all sums to which the insured became legally entitled to recover as damages because of bodily injury or property damage caused by accident and arising out of the ownership, maintenance or use of the uninsured automobile, subject to the limits of liability, exclusions, conditions and other items of the policy. The limits of liability were for bodily injury, $15,000 for each person and $30,000 for each accident; and for property damage, $5,000 for each accident. The word "insured", if unqualified, was defined in relevant part to mean "The named insured and, while residents in the same household, his spouse and the relatives of either; * * *." The term "insured automobile" was defined in relevant

part as "an automobile which is registered in Virginia and which is owned by the named insured or by his spouse if a resident of the same household; * * *." Other provisions of the endorsement will later be mentioned.

The insured automobile was owned by Earle and registered in Virginia.

In May of 1962, the Van Buskirk family moved to East Riverdale, Prince George's County, Maryland because Earle had obtained employment as a technical writer with ACF Industries, located near East Riverdale. The infant girl was enrolled in a nursery school in Hyattsville. Earle brought the insured automobile with him to East Riverdale.

On August 27, 1962, Earle was killed in an accident while driving his automobile in East Riverdale, as a result of a head-on collision with an automobile driven by Daisy Marie Paris, who, with her husband, was insured under a policy having limits of $10,000 for one person. The automobile driven by Earle was on the right side of the highway. The automobile driven by Mrs. Paris crossed over on the wrong side of the road where the head-on collision occurred.

On November 30, 1962, Ferdinand J. Mack, attorney for Victoria, wrote to Grain Dealers in Indianapolis, Indiana, and inquired whether that company would discuss Victoria's claim under the uninsured motorist endorsement. Mr. Mack enclosed Earle's death certificate and advised Grain Dealers that Mrs. Paris had been charged with manslaughter by automobile, that her trial was set for December 17, 1962 and that the company might wish to have one of its representatives attend the trial. Receipt of the letter of November 30 was acknowledged by Grain Dealers on December 11.

On November 4, 1963, Mr. Mack, who theretofore had communicated with counsel for Grain Dealers in the District of Columbia, wrote Grain Dealers and enclosed a copy of the declaration in the wrongful death action of State of Maryland, to the use of Victoria, et al, against Mr. and Mrs. Paris. In the letter of November 4, Mr. Mack informed Grain Dealers that the insurance carrier for Mr. and Mrs. Paris had indicated that the Paris' only had $10,000/$20,000 coverage and that the plaintiffs looked to Grain Dealers for payment of the excess under

the uninsured motorist endorsement. Mr. Mack also advised the company of service upon Mr. and Mrs. Paris, the time within which those defendants had to plead, and the granting of additional time to plead, at the request of the representatives of Nationwide Insurance Company (Nationwide), the insurance carrier for those defendants. Mr. Mack also stated:

> "To my knowledge, this is all the information that is required to be provided you under the above-mentioned. If there is any further information you desire, which we can legitimately furnish to you, please let me know immediately."

On November 20, 1963, Grain Dealers acknowledged Mr. Mack's letter of November 4, enclosed drafts for $1,811 in payment of the collision claim and for $500 in payment of the Medical Payments claim, and stated:

> "We do not believe we are obligated to pay anything on the Uninsured Motorists claim until the adverse party has been found to be legally liable and the amount of the judgment has been established. Furthermore, we are not entirely satisfied that the adverse party was an uninsured motorist since he did have liability insurance coverage in the amount of $10,000 for each person and $20,000 for each accident. We have referred this claim to our Attorneys Brault and Lewis of Fairfax, Virginia. By copy of this letter, we are asking them to contact you for all further negotiations on the Uninsured Motorists claim."

Mr. Mack, in a letter of December 27 to Grain Dealers informed the company of prior settlement negotiations with its representative, the failure of those negotiations and that "appropriate action will be instituted against you at the conclusion of the pending action, to recover that portion of the judgment which is not recoverable from the defendants in the Prince George's County proceeding."

Before the wrongful death case was tried, Mr. Mack after investigating the financial position of Mr. and Mrs. Paris, concluded that any judgment obtained over the amounts covered

by insurance would be uncollectable. On June 2, 1964, he told Jerrold V. Powers, counsel for Nationwide and for Mr. and Mrs. Paris, that the plaintiffs would be willing to reduce the *ad damnum* in the declaration against the wife to $15,000. Mr. Powers then stated that Mr. and Mrs. Paris would offer no evidence in defense and that Nationwide would pay up to $10,-000 on whatever judgment would be entered. Mr. Powers testified that in his opinion there was no defense available to the question of the liability of Mrs. Paris and the best service he could render Mr. and Mrs. Paris was to protect them against any judgment in excess of the amounts of insurance coverage. There was no agreement between counsel in regard to the amount of the judgment, so that the judgment rendered by the court could have been any amount up to $15,000, the amount of the *ad damnum*. The trial court rendered judgment for the plaintiffs for $15,000 and Mr. Mack advised counsel for Grain Dealers of this judgment in his letter of July 10, 1964, enclosed the docket entries, explained the lack of financial resources of Mr. and Mrs. Paris and indicated that suit would be instituted against Grain Dealers unless prompt action resulted from the company. Grain Dealers referred the matter to Maryland counsel and the case at bar was thereafter instituted by Victoria in the Circuit Court for Prince George's County against Grain Dealers. Before Judge Bowen and in this Court, Grain Dealers raised the following questions:

1. Was the appellee, Victoria, precluded from recovery because she failed to have Grain Dealers served with process in the wrongful death action, when the law of Commonwealth of Virginia requires such service?

2. Was she precluded from recovery because she settled the wrongful death action in breach of a condition of the endorsement?

3. Was she precluded from recovery because she failed to notify Grain Dealers that she had changed her residence from the Commonwealth of Virginia to the State of Maryland, in breach of a condition of the endorsement?

Judge Bowen, sitting without a jury, in an able oral opinion, answered all of these questions in the negative and entered a verdict for the appellee Victoria for $5,000 with interest from

date. Judgment absolute was entered on this verdict on February 17, 1965 and from this judgment this appeal was taken.

We have concluded that Judge Bowen answered all these questions correctly and the judgment will be affirmed.

## I.

Under the statutory law of Virginia, Section 38.1-381 (b) of the Virginia Code (1964 Cum. Supp.), automobile policies issued in Virginia are required to contain an uninsured motorist endorsement. Section 38.1-381 (e) (1) of that Code then provides as follows:

> "Any insured intending to rely on the coverage required by paragraph (b) of this section shall, if any action is instituted against the owner or operator of an uninsured motor vehicle, serve a copy of the process upon the insurance company issuing the policy in the manner prescribed by law, as though such insurance company were a party defendant; such company shall thereafter have the right to file pleadings and take other action allowable by law in the name of the owner or operator of the uninsured motor vehicle or in its own name; provided, however, that nothing in this paragraph shall prevent such owner or operator from employing counsel of his own choice and taking any action in his own interest in connection with such proceeding."

The Supreme Court of Appeals of Virginia has held that the requirement of service of process is a condition precedent to recovery under the uninsured motorist endorsement and that the giving of notice of the pending action by the plaintiff did not take the place of the required service of process. *State Farm Mutual Automobile Insurance Co. v. Duncan,* 203 Va. 440, 125 S. E. 2d 154 (1962).

Inasmuch as Grain Dealers was not a party to the wrongful death action in Maryland and was not served with process, the question arises as to whether the Virginia statute requiring service of process is substantive or procedural. If the provision is substantive, then the Virginia statute controls. The

*locus contractus* is the place where the last act is performed which makes an agreement a binding contract. *Sun Insurance Office v. Mallick,* 160 Md. 71, 81, 153 Atl. 35, 39 (1931). In *Mallick,* we indicated that the delivery of the insurance policy and the payment of the premium were the final acts which put the insurance contract in force and that the broker in Baltimore acted as the agent of the insurer in doing those acts, so that the policy was a Maryland contract and the substantive law of Maryland, as the *lex locus contractus,* applied. The same principle applies in the case at bar. See *Galford v. Nicholas, Administrator,* 224 Md. 275, 167 A. 2d 783 (1961) involving a substantive provision of law in regard to the coverage of the policy.

If, however, the provision of the Virginia statute is procedural, rather than substantive, the procedure in the Maryland litigation is governed by the law of Maryland as the *lex fori* and not by the law of Virginia. *Doughty v. Prettyman,* 219 Md. 83, 88, 148 A. 2d 438, 443-444 (1959) ; *Restatement, Conflict of Laws,* §§ 584, 585 and 592. See *Tobin v. Hoffman,* 202 Md. 382, 386, 96 A. 2d 597, 598 (1953) ; *Eastwood v. Kennedy,* 44 Md. 563, 571-572 (1876). See also *Pritchard v. Norton,* 106 U. S. 124, 129, 1 S.Ct. 102, 106, 27 L. Ed. 104, 106 (1882) ; *Wells v. American Employers' Insurance Co.,* 132 F. 2d 316 (5th Cir. 1942) ; *McArthur v. Maryland Casualty Co.,* 184 Miss. 663, 186 So. 305, 120 A.L.R. 846 (1939).

It seems clear to us that the provision of the Virginia statute requiring service of process upon the insurance company is procedural, *Restatement, Conflict of Laws,* § 589, and the Supreme Court of Appeals of Virginia so held in *Creteau v. Phoenix Assurance Co. of N. Y.,* 202 Va. 641, 119 S. E. 2d 336 (1961). The *Creteau* case involved an automobile policy issued prior to the passage of Section 38.1-381(e)(1). The accident happened *after* the issuance of the policy, but one week *prior* to the passage of the statute. As no service was made on the company, the insured contended that the provision was substantive and did not change the terms of the existing policy. In ruling against this contention the Supreme Court of Appeals of Virginia held that the provision was procedural, stating :

"The amendment [Sec. 38.1-381(e)(1)] is procedural * * *. [M]ere matters of procedure and remedy for their enforcement or preservation may be altered, curtailed or repealed at the will of the legislature * * *." (Page 340 of 119 S. E. 2d).

The court of the forum determines according to its conflict of law rule whether the question is one of substance or of procedure, *Wells v. American Employers' Insurance Co., supra; Restatement, Conflict of Laws,* § 584, but we observe that the construction of the statutory provision as procedural by the highest court of Virginia is in accord with our construction of it. *Cf. McArthur v. Maryland Casualty Co., supra.*

Procedure in Maryland is governed by the Maryland Rules of Procedure. See Maryland Rule 1. There is no procedure in Maryland for the service of process upon an insurance company not a party to the litigation, as there is in Virginia. The plaintiffs in the wrongful death action had no way to do this. They advised Grain Dealers of the pendency of the action and sent it a copy of the declaration. If Grain Dealers wished to become a party by intervention, it had ample opportunity to seek to do this.

Even if it be assumed, *arguendo,* that the procedural provisions of the Virginia Code were to be followed by the Maryland courts, the uncontradicted evidence indicates that in this case Grain Dealers has waived its right to rely upon the defense of lack of service of process. For approximately two years during the negotiations between Grain Dealers and Victoria and until the filing of the Bill of Particulars to its general issue pleas in the present case, Grain Dealers asserted that it was refusing to pay Victoria's claim for two reasons: 1) it was not obligated to pay the claim until a judgment had been obtained against the adverse party and the amount of the judgment determined, and 2) that the adverse party was not an "uninsured motorist" within the meaning of the endorsement. Grain Dealers did not raise any defense of the lack of service of process until after this action was filed. Under the Maryland cases these circumstances resulted in a waiver of the defense. A similar situation arose in *McElroy v. John Hancock Life Insurance Co.,* 88 Md. 137, 41 Atl. 112 (1898) involving a life insurance policy

which required that notice of death be given within 90 days. Judge Fowler, for the Court stated:

> "The following grounds or any one of them have been declared to be sufficient to constitute a waiver of any defect in, or defense arising out of failure to duly give notice and proof of death: 'A proposal to settle'; 'an absolute refusal to pay on the merits'; 'a denial of all liability'; 'a negotiation with the insured, without making the objection of defective proof of death.' *Bliss on Life Insurance*, sec. 268; *Cooke on Life Insurance*, p. 118. In its letter to the plaintiff the defendant said: 'The papers in themselves are correct enough, but the company has decided not to recognize the claim under this policy.' Not a word here to indicate that its refusal to pay *the plaintiff* was because of want of seasonable proof of death. * * * It is true it subsequently relied upon this defence, but when it wrote the letter of the 15th of Feb. to him it neither directly nor indirectly placed its refusal to pay upon want of proper proof of death. The letter closed thus: 'We think it might be well for you to see Mr. Thomas, and see whether Miss Dorsey is intending to enter suit as intimated in his letter. Until that matter is settled we are unable to give you any definite information in regard to this case.' The information asked for by the plaintiff was to know if the proofs of death sent by Miss Dorsey were in due form, and if not what he should do to perfect his claim. If the defendant intended to rely upon the defence it *now* sets up it should have said so." (Pages 149-150 of 88 Md.; page 115 of 41 Atl.).

This Court cited with approval and followed the *McElroy* case in *Fidelity & Casualty Co. v. Riley*, 168 Md. 430, 438-439, 178 Atl. 250, 254 (1935). See *Foard v. Snider*, 205 Md. 435, 447-448, 109 A. 2d 101, 107 (1954); *Eastover Stores, Inc. v. Minnix*, 219 Md. 658, 672, 150 A. 2d 884, 891-892 (1959); *Hill v. Benevicz*, 224 Md. 79, 89-90, 167 A. 2d 104, 110 (1961).

The facts in the case at bar in regard to negotiations and exchange of correspondence without reliance on the defense of

lack of service, in our opinion, distinguish the case at bar on the point of waiver from *Creteau v. Phoenix Assurance Co. of N. Y., supra* and even from *State Farm Mutual Automobile Ins. Co. v. Duncan, supra,* although it should be noted that the Virginia law as to waiver as set forth in the *Duncan* case is by no means as broad as the Maryland law in this regard. As the waiver involved in the case at bar involves a procedural matter, the law of the forum would control in any event, as we have already indicated.

## II.

Paragraph (b) under exclusions in the endorsement provides:

"This endorsement does not apply:
* * *

"(b) to bodily injury to an insured, care or loss of services recoverable by an insured or injury to or destruction of property of an insured, with respect to which such insured or his legal representative shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor."

Judge Bowen found that no "settlement" had been reached between Victoria and Mr. and Mrs. Paris in the wrongful death case. We agree with his finding.

The purpose of the exclusion in regard to settlement is to protect the company from the payment of claims which have not been determined by a court, but merely by agreement of the parties themselves. In the case at bar there was no agreement in regard to the amount of the judgment to be determined by the court in the wrongful death action. The court *could* have rendered a verdict for any amount up to $15,000, the amount of the *ad damnum.* There was no prejudice to Grain Dealers by the reduction of the *ad damnum* to $15,000 in an action involving facts which in the opinion of counsel, would support a verdict of between $40,000 and $50,000. Mr. Powers testified that there was no agreement as to who would receive a verdict in the wrongful death case, nor was there any agreement in regard to the amount of any verdict, except that under the pleadings, after the amendment to reduce the *ad damnum* to $15,000 the ver-

dict could not *exceed* $15,000. There was nothing in writing between the parties or their counsel in regard to a verdict or its amount. There was no release asked for or given. Counsel for the parties in the wrongful death action were apparently careful that there would be no settlement and, in our opinion, the trial court was clearly justified in finding that there was no settlement. Whether or not there was an agreement of settlement, and if so, what were its terms, are, upon conflicting evidence, questions for the trier of fact. *John Irving Shoe Co., Inc. v. Dugan*, 93 F. 2d 711 (1st Cir. 1937) ; *Central Paper Co. v. Southwick*, 56 F. 2d 593 (6th Cir. 1932) ; see 15 C.J.S. *Compromise and Settlement* § 54, pages 784-786 and the cases of other States cited in Note 61. The evidence in the case at bar was substantially uncontradicted, but if there were any conflict in the evidence, we do not find that the trial court's finding was clearly erroneous, which is the test in considering reversal upon a finding of fact by a trial judge sitting without a jury. Maryland Rule 886 a.

### III.

Grain Dealers contends that there can be no recovery against it because it was not notified that the named insured, Earle, had moved his residence to East Riverdale, Maryland.

The difficulty with this contention is that there is no provision in the automobile policy which requires that this be done. Grain Dealers seeks to find such a policy requirement by referring to the sixth declaration in the policy that the automobile would be principally garaged in Ferrum, Virginia and also to paragraph 2, under the heading "Conditions", in which the following appears:

> "Premium: If during the policy period the number of automobiles owned by the named insured or spouse and registered in Virginia or the number of Virginia dealer's license plates issued to the named insured changes, the named insured shall notify the company during the policy period of any change and the premium shall be adjusted in accordance with the manuals in use by the company. If the earned premium thus computed exceeds the advance premium paid, the

named insured shall pay the excess to the company; if less, the company shall return to the named insured the unearned portion paid by such insured."

There is also a provision in the policy called "Maryland Endorsement" which begins "(In case this policy *is written in the State of Maryland,* the following applies)"—(Emphasis supplied).

In our opinion, these provisions do not amount to a requirement that the company be notified of a change in address of the named insured. When the policy was issued it was intended that the automobile would be principally garaged in Ferrum and it was. There was, however, no provision in the policy forbidding the named insured from moving the automobile to another location or requiring the named insured to give the company notice of such a change. The provision in paragraph 2 under Conditions—above quoted—applies to *additional* automobiles owned by the named insured or spouse and registered in Virginia. This never occurred and obviously there would be no change in the premium when there was no additional ownership of automobiles registered in Virginia. The Maryland Endorsement provision clearly does not apply as the policy was written in Virginia and *not in Maryland.*

It is well established that the provisions of insurance policies, prepared as they are by the insurance companies, are, in the case of ambiguities, to be construed strictly against the company preparing the policy and in favor of the insured. *Ebert v. Millers Fire Insurance Company,* 220 Md. 602, 155 A. 2d 484 (1959). Although as we have indicated, it is clear to us that the terms of the policy relied on by Grain Dealers do not amount to a requirement that the company be notified of a change of address of the named insured, even if it be assumed, *arguendo,* that the policy is ambiguous in this regard, such an ambiguity would be resolved against the company and in favor of the insured.

> *Judgment affirmed, the costs to be paid by the appellant.*